THE HONORABLE JUDGE JAMES L. ROBART

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

TODD R., SUZANNE R., and LILLIAN R. *formerly known as Jon*,

Plaintiff,

v.

PREMERA BLUE CROSS BLUE SHIELD OF ALASKA,

Defendants.

Case No.: 2:17-cv-01041-JLR

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR: OCTOBER 12, 2018**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Premera Blue Cross Blue Shield of Alaska ("Premera") moves for dismissal of Todd R., Suzanne R. and Jon R.'s (collectively "Plaintiffs") Complaint.

## I. INTRODUCTION

Premera's ERISA health benefit plan (the "Plan") provides coverage only for services that are medically necessary. Plaintiffs seek coverage under the Plan for Jon R.'s ten-month stay at a residential treatment center in Utah. Premera denied coverage after two separate independent child and adolescent psychiatrists reviewed Plaintiffs' claims and concluded that long-term confinement was not medically necessary to treat Jon's condition.

The Court should dismiss this action as a matter of law. There is no evidence to support Plaintiffs' claims that the treatment at issue was medically necessary and therefore covered



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

under the terms of the Plan. Premera's appeal process relied upon an independent physician to review the coverage question. Premera's denial was ultimately affirmed by an Independent Review Organization, and Plaintiffs have not presented medical evidence to contravene the findings of the independent reviewers that the treatment was not medically necessary.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Plan and Premera as Third-Party Administrator

Todd R. is a participant in a group health benefits plan, and Jon, Todd's child, is a beneficiary of the Plan. Complaint, ¶ 2. The Plan is a fully insured employee welfare benefits plan under 29 U.S.C. § 1001 *et seq*. of the Employee Retirement Income Security Act of 1974 ("ERISA"). Complaint, ¶ 5. Premera is the claims administrator for the Plan. *See generally*, JR-011662 et seq. (Contract for Rust Flying Service Benefit Booklet).

### B. Elevations Residential Treatment Center

Plaintiffs seek reimbursement from the Plan for residential treatment that Jon received at Elevations Residential Treatment Center ("Elevations").[1] Complaint, ¶ 34. Jon was admitted to residential treatment on December 31, 2013 with an initial diagnosis of post-traumatic stress disorder, persistent headaches and family stress. Complaint, ¶¶ 28-29. He was fifteen years old. *Id.*

Elevations describes itself as "a normalized high school in a nurturing residential treatment centers environment. We have teachers who directly teach concepts instead of students having to learn through packets or assignments." Declaration of Gwendolyn C. Payton ("Payton Decl."), Exhibit 1 (https://www.elevationsrtc.com/; last accessed August 3, 2018). It is located in Davis County, Utah. Complaint, ¶ 6. Plaintiffs allege out-of-pocket costs in excess of $160,000 for this treatment. Complaint, ¶ 40.

---

[1] Plaintiffs' Complaint refers to the facility at which Jon received treatment as Island View Residential Treatment Center ("IVRTC"). That facility terminated its operations effective April 2014. It reopened under new management as Elevations Treatment Center in May 2014. Plaintiffs' coverage under the Plan did not commence until May 2014, so the relevant facility name for this lawsuit is Elevations, not Island View. Payton Decl., Exs. 2 & 3.


KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

On its website, Elevations describes its program as follows:

**Programs for Troubled Teens Defined**

Programs for troubled teens vary in focus, gender, and treatment techniques. They can be anything from wilderness therapy to intensive inpatient treatment to therapeutic boarding schools. Depending on whether a therapeutic aspect is incorporated, generally programs for troubled teens work to help teens manage their issues and learn coping strategies. The type of therapy included may vary depending on the age, gender, or diagnoses focus of the program for troubled teens.

Many programs for troubled teens focus on helping teens develop useful life skills like team-work, respect, self-awareness, accountability, and much more. The reason they focus on these types of skills is because they can transition with the teen back home and onward. When teens graduate programs for troubled teens, it doesn't mean they're suddenly "fixed," it means they've learned all they can and now they need to go apply it in the real world. After these programs for troubled teens, usually teens continue to attend regular therapeutic sessions to continue a less intensive treatment.

Ex. A. Elevations' website provides the following additional detail regarding its "troubled teens" programs:

**Elevations RTC is a leading program for troubled teens**

Elevations RTC is a program for troubled teens, ages 13 to 17, that struggle with behavioral, emotional, and academic issues like depression, anxiety, trauma, learning disorders, and others. Through the use of many different types of therapy, Elevations strives to give each individual student the best care available. Some aspects that set Elevations apart from other programs.

**A Traditional School Environment Mixed with Residential Treatment**. Unlike many programs for troubled teens, Elevations RTC provides a traditional school environment within residential treatment. This allows for a smoother transition back home into normal life. With licensed teachers, a separate school building, and co-ed classes, Elevations offers each student an academic setting inside a residential treatment center.

**Peer-Culture Approach**. Elevations emphasizes peer feedback and interaction. In the real world, you son or daughter isn't going to be completely separate from the opposite gender in daily life. Our co-ed, supervised setting allows students to be comfortable in normal, real-life environments. A student's interactions with his or her peers is much different than one with his or her therapist, parent, or other adults. Elevation's peer-culture model gives students this much needed interaction between peers that isn't always offered in programs for troubled teens.

**Exciting and Fun Opportunities**. As a program for troubled teens, Elevations offers


KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

> many off-campus, adventurous opportunities that focus on experiential learning. These adventure therapy outings could be anything from camping and rock-climbing to rafting and snowboarding. This allows students to get outside of their comfort zone and accomplish something physical, which builds self-esteem.

Ex. A.

### C. Premera's Medical Policy for Residential Treatment Identifies Necessary Treatment.

#### 1. Premera Covers Only Medically Necessary Services.

The Plan excludes from coverage services that are not medically necessary. The plan language states:

> **EXCLUSIONS**
>
> **Not Medically Necessary**
>
> This plan does not cover services that are not medically necessary, even if they are court-ordered. This rule also applies to the place where you get the services.

[JR-002379].

Medically necessary is, in turn, defined as follows:

> **Medically Necessary and Medical Necessity**
>
> Services and supplies that a doctor, exercising prudent clinical judgment, would use with a patient to prevent, evaluate, diagnose or treat an illness, injury, disease or its symptoms. These services must:
>
> - Agree with generally accepted standards of medical practice
> - Be clinically appropriate in type, frequency, extent, site and duration. They must also be considered effective for the patient's illness, injury or disease
> - Not be mostly for the convenience of the patient, doctor, or other health care provider. They do not cost more than another service or series of services that are at least as likely to produce equivalent therapeutic or diagnostic results for the diagnosis or treatment of patient's illness, injury or disease.
>
> For these purposes, "generally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer reviewed medical literature. This published evidence is recognized by the relevant medical community, physician specialty society recommendations and the views of doctors practicing in relevant clinical areas and any other relevant factors.

[JR-002382].



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

### 2. Premera Covers Only Residential Treatment Center Services that are Medically Necessary as Described By Premera's Medical Policy.

Premera's criteria for evaluating the medical necessity of residential treatment is set forth in its medical policy, "Residential Acute Behavioral Health Level of Care, Child or Adolescent" ("Medical Policy"). [JR-007137-40]. Premera licensed the Medical Policy from MCG Health, which develops evidence-based care guidelines (Milliman Care Guidelines) for use by healthcare and government organizations. *Id.*

In sum, the Medical Policy provides that a residential stay may be temporarily medically necessary until a patient suffering acute symptoms is stabilized and can be treated through less intense care, such as through partial hospitalization or outpatient counseling. [JR-007138]. Long-term schooling or custodial care is not medically necessary per the Medical Policy criteria and is excluded from plan coverage. *See id.*

Under the Medical Policy, residential care admission is appropriate for a child or adolescent exposed to one or more of the following risks: imminent danger to self; imminent danger to others; life-threatening inability to receive adequate care from caretakers; a severe disability or disorder requiring acute residential intervention; severe substance abuse disorder; or the patient requires a structured setting with continued around-the-clock behavioral care. *Id*. at [JR-007137]. The Policy then sets forth detailed and objective criteria to establish each of the above factors. *Id.* The purpose of these criteria is to determine if the symptoms reported on the medical records are severe enough to warrant the continued use of a residential treatment center level of care. *See id.*

## D. Plaintiffs' Claims for Residential Treatment Were Reviewed and Denied by Premera and Two Independent Reviewers.

Plaintiffs submitted claims to Premera for Jon's ongoing residential treatment at Elevations from May 1, 2014 (the effective date of the Plan) forward. Complaint, ¶¶ 28, 30-31. Premera denied Plaintiffs' claims from May 1, 2014 through August 31, 2014 as untimely submitted and denied the claims from September 1, 2014 forward as not medically necessary.


KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

Complaint, ¶ 31; [JR-000049-54] ("Denial Letter"). Premera advised Plaintiffs that its evaluation of the medical necessity of Jon's residency at Elevations was based on the application of Premera's criteria set forth in the Medical Policy and a "review of the information given to us by [the provider]." [JR-000050].

Premera's Denial Letter dated November 18, 2014, explained that the information from the provider did not justify further residential treatment under the applicable treatment guidelines. [JR-000049-50]. Rather, the information from the provider showed that Jon's mental health issues could be effectively treated at a lower level of care: "The information from your provider indicates that you can be treated at a lower level of care. The difficulties that you are still experiencing are usually safely treated at a lower level of care, such as partial hospitalization or outpatient treatment. Your health plan covers only medically necessary services." [JR-000049-50]. "Information from your provider does not show evidence of continued high-risk behavior, immediate threat of high-risk behavior, life-threatening inability to provide self-care or to receive adequate care from caretakers, severe mental health symptoms, or need for a structured setting and continued around-the-clock care to treat a severe mental health condition that partly stabilized during inpatient care." *Id.* "The information from your provider also does not indicate that the most intensive non-residential level of care will still be unable to control your mental health difficulties, or that you need continued treatment for a severe Substance Use Disorder in order to [treat] [sic] your mental health disorder." *Id.*

On May 13, 2015, Plaintiffs appealed the denial of coverage through Premera's internal appeal process ("Level I Appeal"). Complaint, ¶ 32; [JR-000016-47]. Plaintiffs' Level I Appeal letter made two arguments. First, Plaintiffs argued that Premera's Medical Policy did not comport with generally accepted standards of care and was too restrictive. *Id*. Plaintiffs cited to the American Academy of Child and Adolescent Psychiatry Practice Parameters and other medical literature on the standard of care. [JR-000020-22]. Second, Plaintiffs argued that Jon's treatment was medically necessary. They provided a detailed chronology of Jon's


KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

behavior, past treatments and medications, as well as Jon's medical records and Elevations treatment records. [JR-000016-47].

Plaintiffs' Level I Appeal included two letters from doctors who had treated Jon prior to his admission to Elevations. [JR-000027-31; JR-000403-05; JR-000407-408]. Neither doctor treated Jon during his time at Elevations, and neither letter made any assessment of his time there. [JR-000403-05; JR-000407-08]. Plaintiffs also highlighted several progress and therapy notes from Jon's time at Elevations. [JR-000033-34]. These notes described Jon's temperament on individual occasions as "upset," "discouraged at how far away he is from his ideal self," "anxious," "irritable," and "isolating." [JR-000033-34]. Plaintiffs argued that based on these records, resident treatment was medically necessary because Jon "continue[d] to have mood lability [sic], co-dependent behavior, anxiety, and depression" and needed to continue "working on internalizing the coping skills needed to recognize how his mental health issues are affecting every area of his life." [JR-000045].

In its review of the Level I Appeal, Premera included the participation of an "Independent Physician Reviewer," Dr. Williams Holmes, who is Board Certified by the American Board of Psychiatry and Neurology in Child & Adolescent Psychiatry. [JR-002410-14] and [JR-011655-60]. Dr. Holmes's opinion included a "Conflict of Interest Statement" certifying his independence and an absence of any conflict of interest on his part. *See* [JR-011658-59].

Dr. Holmes reviewed Plaintiffs' Level 1 Appeal submission and other relevant claim information, including the Master Treatment Plan, treatment notes and shift logs from Elevations, the Plan language, and Premera's Medical Policy titled, "Residential Acute Behavioral Health Level of Care, Child or Adolescent ORG: B-902-RES (BHG)." [JR-011655].

Dr. Holmes found that although "the patient continued to display chronic difficulties with mood, anxiety, oppositional behavior, and interpersonal conflict after [May 1, 2014]," "these difficulties […] were not of a severity to warrant 24 hour treatment." [JR-011656]. Dr.


**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

Holmes further observed that “at no time was there evidence of imminent risk of harm to self or others, as well as no episodes of self-harming behavior. There was no evidence of deterioration of functioning that would require the level of intensive treatment found in the residential treatment center setting.” [JR-011656]. A Premera Medical Director who is Board Certified in Public Health and General Medicine reviewed Dr. Holmes’s expert opinion. [JR-002410].

Premera denied Plaintiffs’ Level 1 Appeal on June 16, 2015. [JR-002410-13] (“Level I Appeal Decision”). Premera affirmed its prior assessment that residential treatment was not medically necessary. [JR-002410]. Premera reasoned that “[b]y May 1, 2014, his symptoms were not of a severity that would warrant the continued use of a residential treatment center level of care, though he continued to display chronic problems related to his mood and feelings of being ‘overwhelmed,’” those symptoms “could have been treated in a less restrictive level of care,” and residential treatment was therefore “not medically necessary” as required by the Plan language. [JR-002410].

On August 10, 2015, Plaintiffs requested a Level II Appeal. [JR-002428-33] (“Level II Appeal”). In their Level II Appeal, Plaintiffs argued that Premera had failed to advise Plaintiffs of the weight given to the medical records provided by them. [JR-002430]. Plaintiffs questioned whether Premera’s Level I Appeal Decision was based on a “continued stay criteria” or a “discharge criteria.” [JR-002431].

Plaintiffs criticized the allegedly onerous burden imposed by the Medical Policy and provided additional medical records to support their contention that residential treatment is medically necessary. [JR-002430]. Plaintiffs requested that Premera cite to specific instances in the medical records that support Premera’s denial of their claims, which they asserted was required under ERISA. [JR-002433]. Plaintiffs also challenged Premera’s determination that certain claims were not timely filed. [JR-002429-30].

Premera’s Level II Appeal process included a panel review of Jon’s file. The panel consisted of a physician reviewer Board-Certified in Internal Medicine, a Member Contracts Operations Manager, and a New Group and Product Implementation Manager, all three of


KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

whom had experience in health plan appeals. [JR-007151]. The panel reviewed all material submitted with Plaintiffs' Level I and Level II Appeals, Dr. Holmes's findings as the Independent Physician Reviewer, the Premera Medical Policy, Jon's medical records, and the Plan language. [JR-007151].

On September 10, 2015, the Level II Appeal panel upheld the Level I Appeal Decision denying coverage. [JR-007151-52] ("Level II Appeal Decision"). Addressing the medical records, the Level II Denial Letter noted that "[t]he records did not include a comprehensive evaluation, but only a narrative of daily group assessments, or intermittent doctor interviews." [JR-007152]. "This information indicated the absence of a plan for self harm, or to harm others, and no evidence of severe symptoms which could not have been treated in an intensive outpatient management program." [JR-007152]. The Level II Denial reasoned that the "purpose of residential treatment admission is stabilization in the context of a short term stay" and that "the severity of illness for the [residential treatment] level of care [was] not documented in the clinical notes from the facility." [JR-007152].

The Level II Appeal Decision further responded to each of the concerns Plaintiffs raised in their Level II Appeal request. [JR-007151-52]. First, Premera acknowledged it had made an error in the Level I Appeal when it concluded that Plaintiffs' appeal was untimely with respect to five dates of service. [JR-007152-55]. Accordingly, Premera confirmed it had included those claims in the Level II Appeal review. [JR-007152]. Otherwise, Premera explained that its decision was based on its Medical Policy, which used the Milliman Care Guidelines, and constituted generally accepted standards of medical practice that are applied consistently to all plan members. [JR-007152]. Premera then reiterated that coverage for Jon's continued stay was denied based on a standard of medical necessity, specifically noting there was "an absence of record of severe symptoms which could not have been treated in an intensive outpatient management program." [JR-007152]. This decision was in accordance with the Plan which "does not cover services that are not medically necessary." [JR-007152].


KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

On December 18, 2015, Plaintiffs requested an independent review of Premera's decision. [JR-007170-72] ("IRO Request"). The independent review was randomly assigned to MCMC, one of the three IROs Premera used for fully insured claims out of Alaska. [JR-0011743]. The physician reviewer, who remained anonymous, is board certified in Psychiatry with subcertification in Child & Adolescent Psychiatry. [JR-011747]. The IRO reviewer is an attending staff psychiatrist at several northeast hospitals as well as a clinical instructor. [JR-011747]. The IRO reviewer specializes in psychiatric disorders, forensic psychiatry, and child & adolescent psychiatry. [JR-011747]. The IRO reviewer is also an author of peer-reviewed medical literature, a member of the American Academy of Child and Adolescent Psychiatry, American Psychoanalytic Association, and Academy of Occupational and Organizational Psychiatrists. [JR-011747].

On January 14, 2016, MCMC upheld Premera's denial of coverage for inpatient residential treatment. [JR-001745-52] ("Decision Letter"). The IRO Decision Letter concluded that the Plan should not cover the residential treatment for which Plaintiffs claimed coverage under the medical necessity standard. [JR-011746]. The Decision Letter noted that during the time period in question, Jon R. "had periods of time at home during which he was not receiving residential treatment and his clinical course continued." [JR-001751]. This demonstrates that "alternative therapies and approaches that would have been as likely to be effective during the period of time." [JR-001751].

## III. ARGUMENT

### A. Plaintiffs Bear the Burden to Offer Evidence from which a Reasonable Fact Finder Could Return a Decision in Their Favor.

Under the *de novo* standard that applies here, Plaintiffs bear the burden to establish triable issues of fact. "Section 502 of ERISA entitles a participant or beneficiary of an ERISA-regulated plan to bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 724 (9th Cir. 2000)


KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

(quoting 29 U.S.C. § 1132(a)(1)(B)). In reviewing a decision to deny benefits under an ERISA claim, a district court applies a de novo standard unless the plan provides to the contrary. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111, 128 S.Ct. 2343 (2008).

"When a district court reviews a plan administrator's decision to deny benefits under the *de novo* standard of review, the burden of proof is placed on the claimant to prove his entitlement to contractual benefits." *Baxter v. MBA Grp. Ins. Tr. Health & Welfare Plan*, 958 F. Supp. 2d 1223, 1227 (W.D. Wash. 2013) (citing *Muniz v. Amec Const. Mgmt., Inc*., 623 F.3d 1290, 1294 (9th Cir. 2010) (citing *Horton v. Reliance Standard Life Ins. Co*., 141 F.3d 1038, 1040 (11th Cir. 1998); *Farley v. Benefit Trust Life Ins. Co*., 979 F.2d 653, 658 (8th Cir. 1992)). The District Court may decide the case by summary judgment if there are no genuine issues of material fact in dispute. *Tremain v. Bell Indus. Inc.*, 196 F.3d 970, 978 (9th Cir. 1999); *see also, Baxter*, 958 F.Supp.2d 1223 (granting summary judgment for defendant on de novo review due to plaintiff's failure to raise an issue of material fact); *Muniz v. Amec. Const. Mgmt., Inc.*, 623 F.3d 1290 (9th Cir. 2010) (affirming lower court's grant of summary judgment for defendant in denial of long term disability claim where "the district court found that the evidence presented, including the opinions of two health care professionals [] did not confirm Muniz's claims that his symptoms rose to the level of total disability"); *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580 (1st Cir. 1993) (affirming the lower court's grant of summary judgment on de novo review in favor of defendant on its denial of benefits).

"The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.


**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

B. The Undisputed Evidence Supported Denial of Plaintiffs' Claims.

Here, the Court should uphold Premera's denial of the claimed benefits under *de novo* review. As discussed more fully below, the only competent medical evidence in the record supports the denial of the claims. Premera's review relied upon the input from an independent physician, the Level I and Level II appeal denials finding the claimed benefits were not medically necessary, and then affirmed by an Independent Medical Review Organization decision affirming that conclusion. Meanwhile, Jon's medical records satisfied none of the Medical Policy criteria, and Plaintiffs' claims were and still are not supported by a credible medical opinion.

**1. The record does not contain evidence supporting Plaintiffs' claim for coverage.**

Plaintiffs provide no medical opinion or diagnosis as to Jon's condition during the time in question to support their claims. The only medical evidence in the record supporting Plaintiffs' claims is as follows:

- Progress and therapy notes from Jon's time at Elevations which described Jon's temperament on individual occasions as "upset," "discouraged at how far away he is from his ideal self," "anxious," "irritable," and "isolating." [JR-000033-34].
- Two letters from doctors who had treated Jon prior to his admission to Elevations and well before the period of service at issue in this action. [JR-000027-31; JR-000403-05; JR-000407-08]. But neither doctor treated Jon during his time at Elevations, and neither letter made any assessment of his time there. [JR-000403-05; JR-000407-08].

The progress and therapy notes do not show that Jon's treatment at Elevations was medically necessary for the time period beginning on May 1, 2014. Premera's Medical Policy provides for residential stay that is medically necessary until a patient suffering acute symptoms is stabilized and can be treated through less intense care, such as through partial hospitalization or outpatient counseling. [JR-007138]. Long-term schooling or custodial care


KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

is not medically necessary per the Medical Policy criteria, and is excluded from plan coverage. *Id.* The medical evidence offered by Plaintiffs fails to raise an issue of fact as to whether Jon's condition was at such an acute level as to require inpatient care.

The two letters contained in the record from providers who treated Jon prior to his admission to Elevations also fail to support that residential treatment services were necessary at the time of review. [JR-000403-05; JR-000407-08]. Dr. Shubu Ghosh, a psychiatrist, treated Jon from February 8, 2011 through July 16, 2013. [JR-000403-05]. During that period, Dr. Ghosh observed that Jon suffered from depression and anxiety and on two occasions suggested residential care. [JR-000403-05; JR-000407-08]. Nearly half of Dr. Ghosh's undated letter is a summary of Jon's behavior following the termination of Dr. Ghosh's treatment, during which time Dr. Ghosh states that Jon's parents continued to consult with him. [JR-000404-05]. It is based on those events—outside of Dr. Ghosh's treatment of Jon—that Dr. Ghosh concludes that "Jon[] needed inpatient residential level of care" and that "[h]is parents exhausted all outpatient avenues and he required intensive treatment to cope with his debilitating depression, anxiety and behavioral problems. I recommended that Jon[] be put in inpatient treatment because I was concerned for his safety." [JR-000405]. Dr. Ghosh has not treated Jon since July of 2013, six months before he was admitted to residential treatment. His second-hand accounting of events that followed his treatment of Jon and his recommendations based on those events are not reliable medical conclusions. Dr. Ghosh had no contact with Elevations, did not review Jon's medical records from Elevations, and did not treat Jon at any point during his stay at Elevations. His letter therefore lacks foundation and relevance to the question in this case, which is whether a continued stay at Elevations after May 1, 2014 was medically necessary.

Mr. Sumner's letter has similar problems. Mr. Sumner, a licensed clinical social worker, treated Jon for a period of nine months from March 2013 through December 2013. [JR-000407-08]. Jon's parents' initial concerns were Jon's oppositional behavior, depression, relationship issues, and school performance. [JR-000407]. Mr. Sumner's letter, much like Dr.


KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

Ghosh's, summarizes a series of oppositional behavior events. [JR-000407]. Mr. Sumner concludes that he "recommended" residential treatment because "Jon[] continued to decline." [JR-000408]. Mr. Sumner's letter also fails to offer evidence to satisfy the medical necessity requirement. Mr. Sumner had no contact with Elevations, did not review Jon's medical records from Elevations, and did not treat Jon at any point during his stay at Elevations. His opinion is not relevant as to whether it was medically necessary for Jon to continue to stay at Elevations after May 1, 2014.

In *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1129 (10th Cir. 2011), a case closely analogous to the case at bar, the plan denied coverage for a stay at a residential treatment center because the plaintiff's symptoms were not severe enough to require residential care. *See id.* at 1134. Horizon determined that "[t]here was no reported information" that A.S. could not care for himself due to a psychiatric disorder, nor that he required round-the-clock supervision to develop basic living skills. *Id.* at 1134 (internal citations omitted). Instead, Horizon's claims administrator noted that A.S. "went home on a pass and did well with his parents." *Id.* Thus, while A.S. "met criteria for continued treatment," he met those criteria for "a less restrictive level of care" to include "several hour[s] [per] day, multiple times [per] week [of] psychiatric evaluation and treatment including counseling, education and therapeutic interventions." *Id.* The Tenth Circuit affirmed, agreeing with the district court that Horizon properly denied benefits for the residential treatment.[2] *Id.*

Here, the evidence supporting the denial of residential treatment is even stronger than in *Eugene S.* In this case, Plaintiffs' request for residential treatment was reviewed and denied by two separate, independent reviewers who were specialists in behavioral health. In contrast, the Tenth Circuit affirmed the denial of residential treatment services in *Eugene S.*, where there is no record of any independent review.

---

[2] *Eugene S.* was decided based on an arbitrary and capricious standard, but the case applies here, where the facts are similar, and here the relevant facts are undisputed.


KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

### 2. Two Independent Child & Adolescent Psychiatrists Reviewed the Evidence in the Record and Concluded That It Did Not Support a Medical Necessity Determination.

Premera's conclusion that the treatment was not "medically necessary" was based on the opinion of an "Independent Physician Reviewer," William Holmes, MD, a physician Board Certified by the American Board of Psychiatry and Neurology in General Psychiatry and Child & Adolescent Psychiatry. [JR-000009-14]. Subsequently, a reviewing physician Board Certified in Psychiatry with Subcertification in Child & Adolescent Psychiatry reviewed the record on behalf of an IRO and agreed. [JR-011745-52].

The independent reviewers involved in Jon's appeal did not dispute his diagnoses. They both concluded, nevertheless, that in-patient treatment was not "medically necessary." Their decisions were based on their professional experience and judgment upon review of the record provided to them.

Dr. Holmes acknowledged that Jon suffered from "chronic difficulties with mood, anxiety, oppositional behavior, and interpersonal conflicts" subsequent to his admission. [JR-000010]. However, he concluded, his symptoms "were not of a severity to warrant 24 hour treatment," noting there was no "evidence of imminent risk of harm to self or others" "no episodes of self-harming behavior," and "no evidence of deterioration of functioning" to require inpatient treatment. [JR-000010].

The IRO physician, after carefully reviewing and summarizing the record, similarly concluded that "withholding treatment would not have reasonably been expected to affect the patient's health adversely." [JR-011751]. The reviewer reasoned that "less intensive alternative approaches would have as much of a chance of improving his condition." [JR-011751].

Plaintiffs offer no qualified opinion in response to the two independent medical experts upon which Premera relied. This is fatal to their claims as a matter of law. *See Krysten v. Blue Shield of California,* No. 15-CV-02421-RS, 2016 WL 5934709, at *5 (N.D. Cal. Oct. 11, 2016), *aff'd sub nom. Krysten C. v. Blue Shield of California,* 721 F. App'x 645 (9th Cir. 2018)


**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

("Blue Cross . . . rel[ied] on the opinions of the three physicians that Krysten had progressed to a point that residential treatment for her condition was no longer medically necessary. Krysten has shown she was still in need of treatment, but has pointed to nothing in the record sufficient to establish that only residential treatment would have been adequate for her medical needs."); *Briesch v. Auto. Club of S. California*, No. 298CV405C, 2000 WL 33710862, *6 (D. Utah Dec. 20, 2000) ("Plaintiffs have not cited to any statement by a doctor, nurse, or legal expert that supports the conclusion that Briesch's continued confinement at an acute treatment center such as Charter Hospital after November 17 was medically necessary.").

Moreover, when a claim is reviewed by an independent review organization and deemed not medically necessary, that finding supports a conclusion that the denial was justified. *See Peter B. v. Premera Blue Cross*, No. C16-1904-JCC, 2017 WL 4843550 (W.D. Wash. Oct. 26, 2017) No. C16-1904-JCC, 2017 WL 4843550, at *5 (W.D. Wash. Oct. 26, 2017) ("The Court finds as follows: Premera's coverage determinations were consistent with Plan requirements, Premera relied on the advice of an independent physician in making its final coverage decision, there is no evidence of shifting rationales, and the IRO review validated Premera's final benefit determination."); *Tracy O.*, 2017 WL 3437672, at *9 (noting, in granting summary judgment in favor of the defendants, that the insurer's "conclusions are further supported by the independent review" of the claims); *Blair v. Alcatel-Lucent Long Term Disability Plan*, 688 Fed. Appx. 568, 576 (10th Cir. 2017) (noting in a disability benefit case that a decision to terminate long-term disability benefits was supported by two independent reviewers concluded that the claimant was able to work); *see also Basquez v. East Cent. OK Elec. Co-op., Inc.*, No. 06-cv-487 (SPS), 2008 WL 906166, at *11 (E.D. Okla. March 31, 2008) (citing *Davis v. UNUM Life Ins. Co. of Am.*, 444 F.3d 569, 575 (7th Cir. 2006)) ("[A]n administrator's decision to seek [] independent expert advice is evidence of a thorough investigation. When an administrator ... opts to investigate a claim by obtaining an expert medical opinion—independent of its own lay opinion and that of the claimant's doctors—the administrator is going to pay a doctor one way or another. Paying for a legitimate and valuable


KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

service in order to evaluate a claim thoroughly does not create a review-altering conflict." (internal citations and quotations omitted))[3]; *see also* John Bronsteen, Brendan S. Maher & Peter K. Stris, *ERISA, Agency Costs, and the Future of Health Care in the United States*, 76 FORDHAM L. REV. 2324-26 (2008) (explaining that external review significantly diminishes agency risk because the agent's discretion for opportunistic behavior is circumscribed by the determinations of an impartial reviewer).

The Affordable Care Act ("ACA") recognizes the probative value of an IRO decision. The ACA mandates an IRO review process for all health plans offered in the United States, with the exception of plans grandfathered under pre-ACA rules. *See* 42 U.S.C. § 300gg-19(b);29 C.F.R. § 2590.715-2719(c)(2)(vii)-(ix). *Group Health Plans and Health Insurance Issuers: Rules Relating to Internal Claims and Appeals and External Review Processes*, 76 Fed. Reg. 37,208, 37,210-11 (June 24, 2011) (codified at 45 C.F.R. pt. 147) (explaining the IRO process for self-insured plans).

The Court should grant summary judgment in favor of Premera because the only competent, admissible medical evidence before this Court confirms that Jon R.'s residential treatment at Elevations was not medically necessary. The same is true here. Accordingly, for the foregoing reasons, there is no issue of fact to preclude summary judgment in favor of Premera and the Plan.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of the Defendants and dismiss this case.

---

[3] *Briesch, Tracy O., Blair,* and *Basquez* were decided on a de novo standard of review. *See Briesch* 2000 WL 33710862 at fn. 7 ("The court reaches this decision under a de novo standard of review."); *Tracy O.*, 2017 WL 3437672, at *10 ("Under even a de novo standard of review, Plaintiffs have failed to show by a preponderance of the evidence that Defendants disregarded or improperly minimized information from S.O.'s treatment providers."); *Blair*, 688 F. App'x at 573 ("our review is de novo"); *Basquez*, 2008 WL 906166, at *12 ("both parties agree that the de novo standard of review is inapplicable"). *Krysten* and *Peter B.* applied the abuse of discretion standard. But all these cases are instructive here, where the evidence is undisputed.


KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

DATED this 14th day of September, 2018.

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP
Attorneys for Defendant
Premera Blue Cross Blue Shield of Alaska

By *_/s/ Gwendolyn C. Payton_*
Gwendolyn C. Payton
WSBA # 26752
gpayton@kilpatrick.com
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Telephone: (206) 467-9600
Facsimile: (206) 623-6793

## CERTIFICATE OF SERVICE

I, Gwendolyn C. Payton, hereby certify under penalty of perjury of the laws of the State of Washington that on September 14, 2018, I caused to be served a copy of the attached document to the following person(s) in the manner indicated below at the following address(es):

Brian S. King
336 S 300 E STE 200
Salt Lake City, UT 84111
brian@briansking.com

John Walker Wood
The Wood Law Firm
800 5th Avenue, STE 4100
Seattle, WA 98104
john@woodfirm.com

☑ **by CM/ECF**

☐ **by Electronic Mail**

☐ **by Facsimile Transmission**

☐ **by First Class Mail**

☐ **by Hand Delivery**

☐ **by Overnight Delivery**

/s/ *Gwendolyn C. Payton*
Gwendolyn C. Payton



**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946