1
2
3
4
5

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

6

7  TODD R., SUZANNE R., and LILLIAN R.,   )
8                                          )
       Plaintiffs,                         )
9                                          )
   v.                                      )     No. 2:17-cv-01041-JLR
10                                         )
   PREMERA BLUE CROSS BLUE SHIELD          ) **PLAINTIFFS' RESPONSE TO**
11  OF ALASKA,                             ) **DEFENDANT'S MOTION**
                                           ) **FOR SUMMARY JUDGMENT**
12         Defendant.                      )
13  _____    )

14         Plaintiffs, Todd R. ("Todd"), Suzanne R., ("Suzanne") and Lillian R. ("Jon")

15  submit their Response in Opposition to Defendant's Motion for Summary Judgment.

16                          **INTRODUCTION**

17         Todd and Suzanne did what anyone would do to obtain proper medical care for

18
19  their child. They sought the help of qualified treatment providers and they followed the

20  providers' advice. Todd and Suzanne exhausted all of the lower levels of care until Jon's

21  providers determined that the only way to keep Jon safe was to admit him to subacute

22
23  residential care. Todd and Suzanne had Jon admitted to Elevations, a residential treatment

24  program in Utah. During Jon's stay, the family's insurance plan changed. When

25  Defendant Premera received claims for Jon's continued treatment it denied the claims

26  alleging that he failed to meet its medically necessary criteria. To reach that conclusion

27

28- 1

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**
**NO. 2:17-cv-01041-JLR**

**BRIAN S. KING, Attorney at Law**
**336 South 300 East, Suite 200**
**Salt Lake City, UT 84111**
**(801) 532-1739, (801) 532-1936 (fax)**

1

Premera had to ignore the recommendations of all of Jon's prior treatment providers, his treatment team at Elevations and misapply the Plan terms.

Defendant Premera's Motion for Summary Judgment claims that Todd and Suzanne are unable to present evidence that Jon was entitled to benefits under the Plan. That assertion is wrong. Jon's treatment was medically necessary and Premera declined payment because it refused to acknowledge the severity of Jon's problems and its denial and appeals process failed to take into account all of Jon's diagnoses. Specifically, Jon received multiple diagnoses with a specific course of treatment that included a requirement that he complete residential treatment. This recommendation is no different than a recommendation to finish taking all of the antibiotics prescribed even if the symptoms reduce or disappear. The failure to finish antibiotics can result in super-strain bacteria and serious risks to the patient. Jon's psychologist characterized the risks that would accompany a failure to complete the program at Elevations as regression. For Jonathan, regression means cutting, self harm, running away, and suicidal ideations.

The parties agree that this Court should apply a de novo standard of review to assess the validity of Jon's need for residential treatment and Premera's responsibility to pay for that treatment. Todd and Suzanne also agree that they bear the burden to prove they are entitled to relief by a preponderance of the evidence. The Record shows that Jon's conditions and behavior satisfied the medical necessity of residential treatment. The Record further shows that Premera and the other reviewers failed to properly analyze the evidence in the pre-litigation record when they denied, or supported the denial of, Todd and Suzanne's benefit claims for Jonathan's residential care.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR**

**BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)**

2

# PLAINTIFFS' RESPONSE TO DEFENDANTS'
## FACTUAL AND PROCEDURAL BACKGROUND

Todd and Suzanne provide below their responses to disputed facts. Plaintiffs do not include facts that are undisputed but reproduce the facts from Defendant's Motion for Summary Judgment that are disputed. Immediately following the Defendants asserted facts, Plaintiffs include their responses to the disputed facts.

**Premera's Statement of Fact:**  Plaintiffs seek reimbursement from the Plan for residential treatment that Jon received at Elevations Residential Treatment Center ("Elevations").[1]  Complaint, ¶ 34.  Jon was admitted to residential treatment on December 31, 2013 with an initial diagnosis of post-traumatic stress disorder, persistent headaches and family stress.  Complaint, ¶¶ 28-29.

**Todd and Suzanne's Response:**  Disputed. Jon had diagnoses on Axis I, III, IV and V and included, Axis I: Post Traumatic Stress Disorder; Major Depressive Disorder, Parent Child Relational Problem; Academic Problem; Rule out Eating Disorder, Rule out Anxiety Disorder (possible OCD symptoms prior to medical illness onset). Axis III: New Daily Persistent Headache, intermittent pattern of appetite restriction, Axis IV: Significant family stressors, enmeshment, decline in academic standing, and associated gender identity diffusion. Axis V: Global assessment functioning of 36 which indicates a major impairment in functioning in several areas and unable to function in one of these areas. Rec. 002957

**Premera's Statement of Fact:**  Elevations describes itself as "a normalized high school in a nurturing residential treatment centers environment.  We have teachers who directly teach concepts instead of students having to learn through packets or assignments."  Declaration of Gwendolyn C. Payton ("Payton Decl."), Exhibit 1 (https://www.elevationsrtc.com/; last accessed August 3, 2018).

---

[1] Plaintiffs' Complaint refers to the facility at which Jon received treatment as Island View Residential Treatment Center ("IVRTC").  That facility terminated its operations effective April 2014.  It reopened under new management as Elevations Treatment Center in May 2014.  Plaintiffs' coverage under the Plan did not commence until May 2014, so the relevant facility name for this lawsuit is Elevations, not Island View.  Payton Decl., Exs. 2 & 3.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT NO. 2:17-cv-01041-JLR**

**BRIAN S. KING, Attorney at Law 336 South 300 East, Suite 200 Salt Lake City, UT 84111 (801) 532-1739, (801) 532-1936 (fax)**

3

**Todd and Suzanne's Response:** Plaintiffs do not dispute that the language appears on the screenshots. Plaintiffs dispute that the primary purpose of Elevations is to provide a high school environment. Elevations is a medically comprehensive residential treatment center, as stated on the first page of Defendant's own Exhibit. Dkt. 30-1 page 2 of 10. It is licensed under Utah law as a residential treatment program. As part of Utah's framework for licensing, residential treatment programs must provide a variety of mental health, medical, and educational services. See Utah Adminstrative Code ("U.A.R.") R501-19-1 through 13: https://rules.utah.gov/publicat/code/r501/r501-19.htm (last accessed 10/31/18). While the primary purpose of a residential treatment facility is to provide "specialized tretment, rehabilitation or habilitation services for persons with emotional, psychological, developmental, or behavioral dysfunctions, impairments, or chemical dependencies," R501-19-2, residential treatment programs serving adolescents "shall" also provide individuals opportunies to "continue their education with a curriculum approved by the State Office of Education." R501-19-12.A. Residential treatment programs may provide their own school as long as it is accredited by either the state Board of Education or the National School Accreditation Board.

In addition, the Utah Administrative Code also provides a separate licensing and regulatory scheme for "therapeutic schools" found at U.A.R. R501-15, et. seq. Elevations was licensed as a residential treatment program, not a therapeutic school. It provides all the professional staff and services required by U.A.R. R501-19-5D.1., 2. and 3.

  **Premera's Statement of Fact:** Premera's criteria for evaluating the medical necessity of residential treatment is set forth in its medical policy, "Residential Acute Behavioral Health Level of Care, Child or Adolescent" ("Medical Policy"). [JR-007137-40]. Premera licensed the Medical Policy from MCG Health, which develops evidence-based care guidelines (Milliman Care Guidelines) for use by healthcare and government organizations. *Id.*

**Todd and Suzanne's Response:** The guidelines are a screening tool and Premera used a screening tool for acute residential care when Jonathan was receiving subacute care for chronic problems that could not be treated in an outpatient setting. Rec. 192-202, 404-405 Premera failed to provide a complete set of guidelines in the record. The information in the record fails to identify how the guidelines were developed, how MCG Health directed the guidelines to be used, limitations on the scope of their application, or who was directed to use them.

  **Premera's Statement of Fact:** In sum, the Medical Policy provides that a residential stay may be temporarily medically necessary until a patient suffering acute

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

4

symptoms is stabilized and can be treated through less intense care, such as through partial hospitalization or outpatient counseling. [JR-007138]. Long-term schooling or custodial care is not medically necessary per the Medical Policy criteria and is excluded from plan coverage. *See id.*

**Todd and Suzanne's Response:** This analysis is irrelevant for a subacute treatment setting where Jonathan was receiving care for chronic, rather than acute, mental health conditions and dangerous behaviors. Rec. 11656.

    **Premera's Statement of Fact:** Under the Medical Policy, residential care admission is appropriate for a child or adolescent exposed to one or more of the following risks: imminent danger to self; imminent danger to others; life-threatening inability to receive adequate care from caretakers; a severe disability or disorder requiring acute residential intervention; severe substance abuse disorder; or the patient requires a structured setting with continued around-the-clock behavioral care. *Id.* at [JR-007137]. The Policy then sets forth detailed and objective criteria to establish each of the above factors. *Id.* The purpose of these criteria is to determine if the symptoms reported on the medical records are severe enough to warrant the continued use of a residential treatment center level of care. *See id.*

**Todd and Suzanne's Response:** The above language is a summary only and relate to admission criteria. Rec. 000200-201 Defendant has acknowledged that Jonathan was admitted to Elevations prior to this Plan going into effect. Rec. 000049. Premera should have applied a continuing care or a discharge criteria to determine medical necessity. Rec. 000201 The admission criteria for acute residential treatment was inconsistent with Jonathan's needs and his treatment history and out of line with the Plan's medically necessary criteria. Rec. 002382, Dkt. 37 at pages 22-24.

    **Premera's Statement of Fact:** Premera denied Plaintiffs' claims from May 1, 2014 through August 31, 2014 as untimely submitted and denied the claims from September 1, 2014 forward as not medically necessary. Complaint, ¶ 31; [JR-000049-54]

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

5

("Denial Letter").  Premera advised Plaintiffs that its evaluation of the medical necessity

of Jon's residency at Elevations was based on the application of Premera's criteria set

forth in the Medical Policy and a "review of the information given to us by [the

provider]." [JR-000050].

**Todd and Suzanne's Response:**  Premera later acknowledged it was wrong to classify
some of the claims as untimely. Rec. 007173. The Record provides no indication that
Premera attempted to contact Elevations to clarify Jon's treatment needs.

With regard to the remaining information in Cigna's "Statement of Facts," David

will address them in the "Argument" section of this Memorandum.

## ARGUMENT

**1.     The Court Will Apply a De Novo Standard of Review**

When an ERISA benefit plan fails to give clear discretionary authority to a plan

administrator to determine claim eligibility or construe the terms of a plan, a district court

will review a denial of benefits claim de novo.[2] In this case, the Defendant acknowledges

that the de novo standard of review applies.[3] While conducting a de novo review, this

Court will  order Premera to pay for Jon's care as long as a preponderance of the

evidence shows that Todd and Suzanne are entitled to relief.[4] Under the terms of their

plan, Jon's care would be covered if his residential treatment was medically necessary.[5]

Premera never disputed that Jon's conditions warranted residential treatment prior to May

1, 2014.[6] After his admission in December of 2013, Jon underwent a comprehensive

psychological that outlined his need for residential care.[7] Subsequent treatment notes

---

[2] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).
[3] Defendant's Motion for Summary Judgment, Dckt. 33, p. 10 at 23.
[4] *Armani v. Northwestern Mut. Life Ins. Co.*, 840 F.3d 1159, 1162-1163 (9th Cir. 2016).
[5] Rec. 002382
[6] Rec. 000050.
[7] Rec. 00410-430

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

6

verified that Jon's conditions and behavior necessitated ongoing residential care.[8] As a reasonable fact finder, this Court can conclude that the evidence provided by Todd and Suzanne in the pre-litigation record justifies a decision in their favor. Because the preponderance of the evidence weighs in favor of the Plaintiffs' argument that Jonathan's treatment was medically necessary, this Court should reverse Premera's denial and order Premera to reimburse Todd and Suzanne the medical expenses they have paid for Jonathan's treatment.

2. **Because Jonathan's Residential Treatment Meets The Plan Definition of Medically Necessary Health Care, Premera Must Pay To Cover Jonathan's Treatment Costs.**

Todd's insurance plan defines Medically Necessary and Medical Necessity.[9] Services that a doctor, exercising prudent clinical judgment, would use with a patient to treat an illness are medically necessary if they:

- agree with generally accepted standards of medical practice,

- are effective and clinically appropriate in type, frequency and duration,

- are not for the convenience of the patient or provider,

- are cost effective in that they are likely to produce equivalent results for the diagnosis or treatment of the patient's illness.

The Plan defines generally accepted standards of medical practice as: "standards that are based on credible scientific evidence published in peer reviewed medical literature."[10]

A. **Jonathan's Treating Providers Exercised Prudent Clinical Judgment.**

---

[8] This is throughout the record
[9] Rec. 002382
[10] *Id.*

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT NO. 2:17-cv-01041-JLR**

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

7

This de novo review requires the Court to determine whether a doctor exercising prudent clinical judgment would recommend residential treatment for Jon to treat his illnesses and symptoms. The Record reflects that no fewer than five providers recommended residential treatment. During his outpatient treatment, Jonathan worked extensively with Dr. Ghosh, Tad Sumner, LCSW, and Dr. Chuck Lester. Each of these medical professionals knew Jonathan well. Each recommended that he receive residential treatment in light of the failure of various outpatient attempts to treat Jonathan.[11]

Once admitted to Elevations, Chris Paegle, APRN, performed a Psychiatric Evaluation that verified the medical necessity and appropriateness of admission to Elevations, a residential treatment center.[12] Additionally, Laura Brockbank, Ph.D. performed a comprehensive psychological evaluation that made multiple mental health diagnoses and "strongly recommended that [Jon] complete the program at [Elevations]."[13] While at Elevations, Jon was treated by therapist Phyllis Tronrud, CMHC, and Dr. Kirk Simon for psychiatric care.[14] Nothing in the record that suggests that any of these providers used anything other than "prudent clinical judgment." Likewise they find nothing in the record to contradict Jonathan's diagnosed conditions of post-traumatic stress, major depression, anxiety and other mental health issues.[15]

### B. Jon's Treatment Providers Used Generally Accepted Standards Of Medical Practice to Recommend Residential Treatment and Continue that Treatment.

Under the Plan terms, a doctor exercising prudent clinical judgment still must meet the generally accepted standards of medical practice to qualify for coverage. Under the

---

[11] Rec. 000027 and 000403-408
[12] Rec. 002961-002957. This record is also reproduced where 2961 is the first page and 2957 is the last.
[13] Rec. 000410-430 at 000427
[14] Rec. 002961
[15] Rec. 000427

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

8

Plan, generally accepted standards of medical practice means standards that are based on credible scientific evidence published in peer reviewed medical literature.[16] Jon's initial psychiatric evaluation confirmed he needed residential care by using DSM criteria. The DSM is widely recognized as "the authoritative reference used in diagnosing mental disorders."[17] A subsequent psychological evaluation also based its diagnoses and recommendations on credible scientific evidence supported by peer reviewed literature. Dr. Brockbank evaluated Jon using valid and reliable instruments including the Wechsler Intelligence Scale for Children, the Minnesota Multiphasic Personality Inventory, the Millon Adolescent Clinical Inventory, the Rorschach Inkblot Test and others.[18]

While Jon's providers demonstrated how they applied generally accepted standards using a myriad of credible resources, Premera hangs its hat on the Milliman Care Guidelines as the only means to determine medical necessity.[19] Premera acknowledges that other peer reviewed criteria exist[20] but gives no valid reason that this Court is limited to the Milliman criteria during a de novo review. Even though the policy fails to give Premera discretionary authority, it refused to consider the American Academy of Child & Adolescent Psychiatry parameters Todd and Suzanne proposed during the denial and appeals process. This Court need not likewise refuse. In addition, in their Opening Memo, Todd and Suzanne provided a variety of other published medical necessity criteria to demonstrate that the Milliman criteria requiring "acute" symptoms before medical necessity for residential treatment is covered is out of the mainstream of generally accepted standards of medical practice.

---

[16] Rec. 002382
[17] *Young v. Murphy*, 615 F.3d 59, 61 n. 1 (1st Cir. 2010).
[18] Rec. 000410, 415-425
[19] Rec. 002410.
[20] Rec. 002410-2411

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT NO. 2:17-cv-01041-JLR**

**BRIAN S. KING, Attorney at Law 336 South 300 East, Suite 200 Salt Lake City, UT 84111 (801) 532-1739, (801) 532-1936 (fax)**

9

But even if this Court accepts the Milliman guidelines, Todd and Suzanne identified in the pre-litigation appeal process the risks associated with Jon's conditions and behaviors that justified his residential treatment. Premera never disputed that Jon was properly admitted at Elevations for residential treatment. Premera failed to properly evaluate the medical necessity of Jon's treatment at Elevations because it never identified or applied continued stay or discharge medical necessity criteria. Premera never provided either continued stay or discharge criteria for the record. The only medical necessity criteria Premera has identified as having considered in this case was admission criteria for acute residential treatment. But it is self-evident that medical necessity criteria to evaluate whether a patient's condition justifies *admission* to a residential treatment program is not the same as medical necessity criteria to evaluate whether an individual properly admitted for residential treatment continues to qualify for coverage. In short, Premera cannot explain why it was appropriate to use admission criteria for a patient who had been in treatment for four months.

Finally, Premera provides no evidence that any reviewer ever assessed the medical necessity of Jon's residential care taking into consideration his major depression and anxiety disorders. Because Jon meets the criteria for residential treatment using generally accepted standards of medical care, Premera's reason for denying the claim was unjustified.

//

//

//

//

28- 10
PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

10

### C. Jonathan's Care Was Clinically Appropriate, Not For Convenience, And Was Cost Effective Because A Lower Level Of Care Would Not Have Yielded The Same Results.

When assessing the clinical appropriateness of residential treatment, Dr. Ghosh could not have been more clear: "Levels of care have been tried and failed."[21] He went on to say, "[i]npatient residential care was the only option for Jonathan."[22] That conclusion was confirmed by both the initial psychiatric evaluation and the psychological evaluation.[23] The continued need was verified by Jonathan's ongoing risky behavior during his stay that was monitored by medical professionals.

With his family living in Alaska, there was nothing convenient about Jon's care at a residential treatment center in Utah. But the placement was necessary because a lower level of care had not produced positive changes and, in the minds of the clinicians who knew Jonathan best, was not likely to produce positive changes.

Seemingly anticipating the claims that Premera and the reviewers would make, Dr. Brockbank confirmed that Jonathan needed to complete his treatment to avoid regression.[24] The record reflects that Jon required residential treatment as he continued to deal with issues of self harm, suicidal ideation, depression and anxiety. His behavior tracked the prediction that Jon would use dysfunctional coping methods when dealing with emotional issues.[25] Because Jon had failed lower levels of care, his treatment providers were right when they recommended he complete residential treatment instead of risking his well being at a lower level of care. Premera's argument that Jon could have been satisfactorily treated at a lower level of care relies on nothing but conclusory

---

[21] Rec. 000404
[22] Rec. 000404-405
[23] Rec. 002961-02965 000410-430.
[24] Rec. 000427-428
[25] Rec. 000427-428, 000032-46

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

28- 11                                                                11

statements. Premera makes those assertions without ever questioning the basis, judgment or professionalism of Jon's providers. It makes that argument without its reviewers having done another beyond reviewing a cold medical record.

Jon meets all of the criteria under the plan definitions of medically necessary and medical necessity. He received diagnoses and treatment from professionals using prudent clinical judgment applying generally accepted standards of medical practice. The level of care was cost effective, appropriate for his needs, and not for the family's convenience. Premera should pay his claims.

### 3.     Premera's Denial Analysis is Flawed.

Premera mischaracterizes the medical evidence supporting Todd and Suzanne's claim. First, Premera attempts to restrict the competent diagnoses made by treatment providers. Premera suggests that if there is no new "medical opinion or diagnosis as to Jon's condition during the time in question" the claim for benefits is unsupported.[26] That is akin to saying that if someone broke a bone a month ago but the only current evidence that supports that fact is a cast and crutches, the absence of current x-rays demonstrates the cast and crutches are not medically necessary. That is not how diagnoses work. A diagnosis is made and treatment recommendations flow from those diagnoses.

Premera ignored the diagnoses and treatment recommendations from competent medical providers.[27] Premera claims "[t]he only evidence in the record supporting Plaintiff's claims is as follows:

- Progress and therapy notes from Jon's time at Elevations which described Jon's temperament on individual occasions as "upset," "discouraged at how far away he is from his ideal self" "anxious. "Irritable," and isolating." [JR-000033-34].

---

[26] Dkt. 33,  p.12 at 11-12
[27] Rec. 000403-405, 000407-408, and 000410-430. See also Rec. 002961-2956.

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

12

- Two letters from doctors who had treated Jon prior to his admission to Elevations and well before the period of service at issue in this action. [JR-000027-31; JR-403-05; JR-000407-08]. But neither doctor treated Jon during his time at Elevations, and neither letter made any assessment of his time there. [JR-000403-05, JR-000407-08]."[28]

Todd and Suzanne provided two additional evaluations that Premera simply dismissed. And the complete medical records from Elevations support Todd and Suzanne's arguments.

Premera also mischaracterizes Jon's temperament and mental health issues in its first bullet point. Premera's minimization becomes clear if the Court simply turns two pages from when Premera ended its citation to the record. The Psychiatric Progress Note from June 16, 2014 discuss Jon's increase in reactivity and suicidal thoughts: "[Jon's] suicidal thoughts continued and he was put on Self-Harm Precautions over the weekend."[29] The Individual therapy note of the same date states:

> [Jon] shared how he has been overwhelmed and has felt a strong desire to cut, 'like I used to.' He expressed how he is not in the 'right head space' to open up right now. He could not make a commitment for safety and did not feel confident that he could go to staff before harming himself.[30]

Those behaviors clearly indicate a need for residential treatment. When Premera denied the claim and each reviewer upheld the denial, each failed to either acknowledge or give credit to the existence of suicidal thoughts and self-harm. Such critical analytical errors cause Premera to lose credibility and persuasive authority. The record does include the less intense emotional feelings that Premera choses to cite. But Premera is disingenuous when it uses those examples but omits Jon's severe and dangerous symptoms contained in the complete record that show a need for residential treatment.

---

[28] Dkt. 33 at page 12.
[29] Rec. 000036.
[30] Id.

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

Dr. Brockbank warned, "[g]iven Jonathan's history of running away and suicidal ideation, it is recommended that he be closely monitored. It is likely that when Jonathan begins to focus on his emotional issues, he may depend on his dysfunctional coping methods to manage his internal feelings of distress."[31] When he exhibited dysfunctional coping methods, Jon was safe because his methods were managed in a residential treatment center setting.

**4. This Court Should Give Greater Weight to Jon's Treatment Providers than Reviewers Who Have Not Examined Jon.**

Premera points out that the Dr. Ghosh and Mr. Sumner's didn't treat Jon at Elevations.[32] To the extent that any lack of in-person treatment lessens their persuasive capacity, that same reasoning applies more strongly to Premera's reviewers. None of them had ever met Jon let alone treated him. Furthermore, Premera never challenged Dr. Ghosh and Mr. Sumner's recommendations for residential care as invalid. Mr. Sumner and another provider, Dr Lester, Ph.D, made their recommendation for residential treatment in early December 2014.[33] Dr. Ghosh also confirmed that for his safety, "inpatient residential care was the only option for Jonathan."[34] Premera fails to mention that the psychiatric evaluation provided at Jon's admission to Elevations recommended Jon be admitted for residential care and, to make the most appropriate treatment plan, participate in a psychological evaluation.[35] Premera also overlooks that Dr. Brockbank, who conducted the psychological evaluation, confirmed the diagnoses of anxiety, major depression and post-traumatic stress disorder. She then stated: "It is strongly

[31] Rec. 000428.
[32] Defendant's Motion for Summary Judgment, Dkt. 33 at page 12 at 20-22.
[33] Rec. 000408
[34] Rec. 000404-405.
[35] Rec. 002956-2957

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

14

recommended that Jonathan complete the program at Island View."[36] The recommendation did not advocate acute residential care nor long-term schooling or custodial care. The recommendation addressed Jon's chronic conditions and the medical necessity for his safety.

Contrary to Premera's claim, the medical evidence supports residential treatment. It is undisputed that Jon's prior treating professionals prescribed ongoing residential care. It is also undisputed that Jonathan did not leave Elevations until 2015. During his time at Elevations, Jon was formally evaluated at least twice and received daily care from competent medical providers. Premera cannot credibly argue that no medical evidence supported the need for continued residential care. Premera claims that Jon's pre-Elevations professional providers made no assessments of Jonathan after his admission. That fact is not undisputed. Dr. Ghosh wrote that "[a]fter our last session, I continued to consult with [Jon's] parents."[37] That letter was written as part of the appeals process and Dr. Ghosh clearly made that statement during the relevant time frame. His letter reiterated the original recommendation for residential treatment. The Court should not give greater weight to the removed and distant reviewers over the well reasoned and grounded opinions of Jon's treatment providers, including those who treated him before and during his time at Elevations.[38]

Todd and Suzanne note that the psychological evaluation was dated less than 2 months from the time that Premera denied coverage.[39] In addition to the previously noted diagnoses, Dr. Brockbank also identified parent child relational problems, social

[36] Rec. 000427 - Plaintiffs note again that Island View became Elevations.
[37] Rec. 000404
[38] *Rasenack v. AIG Life Ins. Co.*, 585 F.3d 1311, 1325-1326 (10th Cir. 2009).
[39] Rec. 000430

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

15

exclusion or rejection, and avoidant and dependent personality traits.[40] The combination of those factors and Jon's behavior confirmed the need for residential care. During the time in question, Jon continued to exhibit self-harm and suicidal ideations.[41]

Nevertheless, the Level II appeal denial erroneously claims:

> the records did not include a comprehensive evaluation, but only a narrative of daily group assessments or intermittent doctor interviews. This information indicated the absence of a plan for self harm, or to harm others and no evidence of severe symptoms which could not have been treated in an intensive outpatient management program.[42]

In fact, the record contains treatment provider reports, an admission psychiatric evaluation, a comprehensive psychological evaluation, and therapy and psychiatric notes that verify Jonathan had serious problems including plans for self harm and suicidal ideations such that the program needed to institute protocols to keep Jonathan safe.[43]

Premera claims that continued residential care did not meet its definition of medical necessity, but its incomplete review reveals it failed to take into account factors that prove just the opposite. Premera does not dispute the basis for the original admission for residential care.[44] It does not claim that Dr. Ghosh. Mr. Sumner or Dr. Lester lacked a basis to recommend residential treatment. Premera simply states that the admission happened before its coverage began. Even after Jonathan was in Utah, Dr. Gosh continued to consult with the parents.[45] Rather than being problematic for Todd and Suzanne, the letters help explain the depth of Jon's problems, the superior knowledge of

---

[40] Rec. 000427
[41] Rec. 002474-2476
[42] Rec. 007173
[43] Rec. 000403-405, 002961-2956, 000410-430, and 002474
[44] Rec. 000050
[45] Rec. 000404

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT NO. 2:17-cv-01041-JLR**

**BRIAN S. KING, Attorney at Law 336 South 300 East, Suite 200 Salt Lake City, UT 84111 (801) 532-1739, (801) 532-1936 (fax)**

Dr. Ghosh compared to the knowledge of Premera's reviewers, and why Jon needed residential care.

A careful review of the pre-litigation appeal process shows several flaws in the initial denial and the subsequent reviews that upheld the denial. First, Premera never applied the medically necessary criteria as outlined in the Plan.[46] Instead it used the Milliman screening tool guidelines for Post-Traumatic Stress Disorder: Residential care or Residential Acute Behavioral Health Level of Care.[47] These screening tools only assessed *admission* criteria for *acute* level of care and didn't consider subacute residential treatment for continuing care.[48] Because Jon was previously admitted and received subacute care, Premera's attempt to limit this Court's review to medical necessity criteria addressing only *admission* criteria for an *acute* level of inpatient care is improper.[49]

Despite Todd and Suzanne pointing out to Premera during the denial and appeals process that it was using the wrong medical necessity criteria, Premera continued to apply the Milliman admission criteria for an acute level of care. In light of the undisputed fact that Jon received treatment in a subacute residential facility, this was clearly wrong.[50] In their opening brief, Todd and Suzanne demonstrated that Jon qualified for residential care using the AACAP criteria.[51] Futhermore, residential care was appropriate using Premera's medical policy because Jon had not met the conditions necessary to justify discharge. The discharge criteria indicate "continued residential care is generally needed until 1 or more of the following: "Residential care no longer necessary due to adequate

---

[46] Rec. 002382
[47] Rec. 000192-203.
[48] *Id.*
[49] Defendant's MSJ Dkt. 33 p. 13 at 2-3
[50] Rec. 000192- 200, 000049, 11655, 2410, 7172, 11746.
[51] Dkt. 37 at page 22-24

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT NO. 2:17-cv-01041-JLR**

**BRIAN S. KING, Attorney at Law**
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

patient stabilization or improvement as indicated by **ALL** of the following:"[52] The criteria then list six risk factors that would support continued residential care unless all had been eliminated. The record reflects that Jon failed to meet at least two criteria.

First, thoughts of suicide were not absent from the record, they were present.[53] Because the record contains evidence of suicidal ideation and Premera stated that there was none, it is clear Premera was wrong in its conclusion. Second, the treatment providers opined that Jonathan could not be managed at a lower level of care.[54] Jon also continued to show running away behavior which necessitated staff to check on him at night. [55] He exhibited this symptom throughout his stay at Elevations. he was still exhibiting similar symptoms from the time of admission.[56]

The discharge criteria also require that Jonathan and his parents understand the follow up treatment and crisis plan.[57] The family required therapeutic intervention just to make it through an hour long session and they still needed assistance working on appropriate family roles.[58] Jonathan's home visits and escalations during family therapy sessions demonstrate that neither Jon nor his parents were were ready for follow-up treatment or crisis plan.[59] Jon's problems continued throughout 2014.[60] In April of 2015, Jonathan continued to have mood lability.[61] It was also not until 2015 that Jonathan acknowledged how he had felt suicide was inevitable for him.[62] The record amply

---

[52] Rec. 000201
[53] Rec. 002474
[54] Rec. 000404, 000408, 002957, 000427
[55] Rec. 002475-2476
[56] *Id.*
[57] Rec. 000201
[58] Rec. 002476-2477
[59] Rec. 002476-2477.
[60] Rec. 002480
[61] Rec. 002483
[62] Rec. 002464

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

supports that Jonathan never met the discharge criteria until he was discharged from

Elevations.

Despite Todd and Suzanne's requests that Premera provide criteria for continued

stay or utilize a different continued stay criteria, Premera and the other reviewers

persisted in using the wrong criteria. This resulted in a flawed analysis of whether Jon's

treatment was medically necessary and covered under the Plan. Premera's actions would

not survive an arbitrary and capricious review. They certainly lend no support to

Premera's position under a de novo review where Todd and Suzanne have provided

ample evidence that Jon meets the medical criteria for residential treatment.

Premera's reliance on the Tenth Circuit case of *Eugene S.* is unavailing.[63] As

Premera noted, *Eugene S.* was decided under an arbitrary and capricious standard of

review. In addition, because Jon was experiencing suicidal ideation and plans for self-

harm, this case is distinguishable from *Eugene S.* Moreover, Jon's symptoms continued

to manifest themselves throughout his time at Elevations. One particular example reflects

that Jon did not do well on a leave of absence pass as late as October 2014.[64] Thus the

comparison to *Eugene S.* that Jon could safely return home when lesser levels of

treatment failed flies in the face of Jon's experience at home. A premature discharge

would simply have put Jonathan at risk to regress and return to prior risky behaviors.[65]

Jon's treatment team provides more accurate and detailed bases to justify residential

treatment than Premera's remote and limited analysis provides reason to think residential

treatment was not justified. Jon's treatment team's opinions should carry the day.

---

[63] Dck. 33 at p. 14
[64] Rec. 002479.
[65] Rec. 000427-428

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR**

**BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)**

## 4. The External Reviews Don't Help Premera.

Premera's initial denial, its two appeals and the external reviews fail to undermine Todd and Suzanne's claim that Jon's treatment was medically necessary. Premera argues that the external reviews support its prior findings that Jon's residential treatment was not medically necessary.[66] Unfortunately the other reviewers suffer the same problem as Premera's reviewers.

First, each of them was limited to the cold record with no personal treatment history with Jonathan. Second, the record reflects no effort to cure this problem by the reviewers contacting the treatment providers for clarifications or to determine if they had missed something like suicidal ideations, thoughts of cutting, running away or other serious behaviors. While other reviewers noted the suicidal ideation and self-harm concerns, the external reviewers never analyzed how a less intensive treatment would keep Jon safe. In fact, the one reviewer ignored the difficult emotional dysregulation Jon experienced when on a home visit.[67] Rather than identify this as a risk factor, the reviewer opined that the difficult home visit supported a lower level of care because "his clinical course continued."[68]

Third, no reviewer has challenged Jon's diagnoses nor alleged that Dr. Brockbank was wrong when she recommended that Jonathan needed to complete residential treatment. Nevertheless, each concludes that Jon doesn't need to complete the treatment at Elevations. Fourth, even though the reviewers had access to ample psychiatric and

---

[66] Dkt. 33 p. 16
[67] Rec. 11751
[68] Rec. 011751

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

20

therapist notes, each reviewer suggests that the medical evidence failed to supports the claim of medical necessity.

If anyone failed to exercise prudent clinical judgment it would be Premera and its external reviews. Each of them was willing to recommend termination of residential treatment without consulting treatment providers to clarify any questions regarding medical necessity. Premera's willingness to deny coverage and place Jonathan at risk is indicative of the conflicts of interest the Supreme Court acknowledges beset insurance companies in ERISA cases.[69] Though required under the statute's fiduciary duty provisions to act ". . . solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose . . ." of providing them benefits,[70] Premera chose to elevate its own financial interests above Todd and Suzanne's. Insurers are subject to the inherent conflict that every claim paid is less money for the corporate coffers. In short, what Premera viewed as a *business* model is actually a *fiduciary* process. And while external reviews may mitigate that conflict to some degree, they are not sufficient when performed badly nor are they an adequate substitute for the knowledge and expertise the comes from face-to-face examinations and the in depth knowledge that comes from competent treating providers.

## CONCLUSION

Jon and his family endured a difficult trial brought on by severe mental health challenges. Fortunately, they sought out competent treatment providers to address Jon's dangerous behavior. When outpatient care failed, the family followed the recommendations for residential care. Detailed psychiatric and psychological

---

[69] Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008)
[70] 29 U.S.C. §1104(a)(1)(A)(i).

28-21
PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

21

examinations and evaluations confirmed those recommendations. Jon received appropriate and medically necessary treatment at Elevations. When Premera denied the claims for coverage of Jon's residential treatment, the family's difficult time became a nightmare. Because the record is clear that Jon qualified for coverage under the terms of the Plan, this Court should order Premera to finally make right and do what they should have done long ago - pay for Jon's coverage.

DATED this 31st day of October, 2018.

RESPECTFULLY SUBMITTED,


 s/ Brian S. King
Brian S. King
Attorney for Plaintiffs

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

22

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States, that on the 31st day of October, 2018, the foregoing document was presented to the Clerk of the Court for filing and uploading to the Court's CM/ECF system. In accordance with the ECF registration agreement and the Court's rules, the Clerk of the Court will send email notification of this filing to the following attorney for the defendant:

Gwendolyn C. Payton
Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
gpayton@kilpatricktownsend.com

DATED: October 31, 2018.

s/ John Walker Wood
John Walker Wood (WSBA #39120)
The Wood Law Firm, PLLC
800 5th Ave, Suite 4100
Seattle, WA 98104
(206) 447-1342 (office)
(206) 577-5380 (fax)
Email: john@woodfirm.com

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

23