THE HONORABLE JUDGE JAMES L. ROBART

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| TODD R., SUZANNE R., and LILLIAN R. *formerly known as J.R.*, <br><br> Plaintiff, <br><br> v. <br><br> PREMERA BLUE CROSS BLUE SHIELD OF ALASKA, <br><br> Defendants. | Case No.: 2:17-cv-01041-JLR <br><br> **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** <br><br> **NOTED ON MOTION CALENDAR: NOVEMBER 14, 2018 (AMENDED)** <br><br> **ORAL ARGUMENT REQUESTED** |

## I.  INTRODUCTION

In opposing Premera's motion for summary judgment, Plaintiffs make various arguments attacking the Milliman Guidelines used by Premera and the by independent psychiatrists who evaluated Plaintiffs' claim. They argue that the Milliman Guidelines are inappropriate for evaluating the medical necessity of the "subacute" level of care that Lillian was receiving at Elevations. But there is no evidence that Lillian was receiving "subacute" care, or as to what that even means, or how Lillian's alleged receipt of "subacute care" made her ten-month confinement at Elevations medically necessary. The Court should grant summary judgment in favor of Premera because Premera and the independent psychiatrists who reviewed Plaintiffs' claim and subsequent appeals considered many factors, including the entire

record submitted by Plaintiffs and the nationally recognized Milliman Guidelines. Plaintiffs offer no contrary evidence that creates a material issue of fact.

## II. ARGUMENT

**A. Premera's Use of the Milliman Guidelines Was the Standard of Care.**

**1. There Is No Evidence That Lillian Received "Subacute" Care, Nor Any Evidence Regarding The Meaning Of "Subacute Care," Or That Any Guideline Or Standard Of Care Supports Subacute Care In Long-Term Residential Treatment For Lillian's Condition.**

The medical guidelines as well as all the independent psychiatrists who reviewed Plaintiffs' claim hold that only an acute condition justifies residential care of an adolescent, and then only for a short time until the patient's condition has stabilized. But in opposing Premera's summary judgment motion, Plaintiffs argue primarily that Premera applied the wrong guidelines given that Lillian was previously admitted to Elevations and the level of care she was receiving there was "subacute". Plaintiffs argue as follows: "Because [Lillian] was previously admitted and received subacute care, Premera's attempt to limit this Court's review to medical necessity criteria addressing only *admission* criteria for an *acute* level of inpatient care is improper." Dkt, 43, Plaintiffs' MSJ Opp. at 17 (emphasis added). The argument fails. Plaintiffs submit no evidence that any guideline or standard of care supports subacute care in the long-term residential treatment context for Lillian's condition. Nor do Plaintiffs present any evidence that Lillian even received "subacute" care, however that is defined. This word "subacute" does not appear in any pages of the record cited by Plaintiffs in support of their assertion that she received "subacute care."

Plaintiffs have made up out of whole cloth the notion that Lillian was receiving subacute care, notwithstanding the multiple references to it in their Motion for Summary Judgment. There is nothing in the record to support it. Nor is there anything in the record regarding the meaning of subacute care. Finally, there is no evidence why "subacute care" could possibly support 24/7 confinement of an adolescent Lillian's condition—here for ten

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT- 2

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

months.  Such confinement is only medically necessary for acute cases, and then only until the patient's condition stabilizes.

Two federal ERISA cases in Massachusetts brought by patients who received treatment at Elevations—when it was called Island View—(and represented by the same Plaintiffs' counsel herein) against Blue Cross Blue Shield of Massachusetts did specifically conclude that Elevations provides subacute care; but both cases held that residential care at Island View (a/k/a Elevations) was not medically necessary.  *Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.*, 852 F.3d 105, 117 (1st Cir. 2017); *Jon N. v. Blue Cross Blue Shield of Massachusetts*, 684 F. Supp. 2d 190, 195 (D. Mass. 2010).[1]  Both cases note that Blue Cross Blue Shield of Massachusetts used the InterQual Criteria, a product that is very similar to and competes with the Milliman Guidelines used by Premera.  852 F.3d at 117; 684 F. Supp. 2d at 196.[2]  The InterQual criteria contain guidelines for determining medical necessity of residential treatment.  *Id.*

In both cases, the courts held that residential treatment at Elevations was not medically necessary, based on Plan definitions of "medically necessary" that closely resemble the definition in Premera's Plan.  852 F.3d at 117; 684 F. Supp. 2d at 195.  In *Stephanie C.* the court noted that with respect to "the meaning of 'acute' versus 'subacute,'" Blue Cross Blue Shield "asserts that the words are used interchangeably in the health insurance industry."  852 F.3d at 117, n.6.  The court held that the distinction did not affect the outcome of the case.  *Id.*

---

[1] Both cases were decided on an arbitrary and capricious standard, but they concluded that there was no evidence to support Plaintiffs' claims.  *See id.*
[2] *See also, Norfolk Cty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 877 F.3d 687, 690 (6th Cir. 2017) ("To determine whether a person needs inpatient or outpatient care, most hospitals use one of two systems: the InterQual Criteria or the Milliman Care Guidelines. Both were developed by independent companies with no financial interest in admitting more inpatients than outpatients. . . . [T]he Milliman Guidelines were written and reviewed by over 100 doctors and reference 15,000 medical sources. About 3,700 hospitals use InterQual and about 1,000 use Milliman—over 75% of hospitals nationwide.").

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT- 3

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

Here there is no evidence that Lillian received "subacute" treatment at Elevations or what the term even means. And there is no evidence that the distinction even matters given Premera's definition of medically necessary and based on the Milliman Guidelines.

> **2. Premera's Use of the Milliman Guidelines is the Standard of Care, and the Courts have Recognized it As Such.**

Plaintiffs assert that Premera used "used the Milliman screening tool guidelines for Post-Traumatic Stress Disorder: Residential Care or Residential Acute Behavioral Health Level of Care." Dkt 43, Plaintiffs' MSJ Opp. At 17. As an initial matter, this quotation misleadingly conflates two separate Milliman Guidelines and is an incomplete and incorrect statement of either title. The actual titles of the two sets of Guidelines in the record are: "Posttraumatic Stress Disorder: Residential Care" (No. ORG: B-13-RES (BHG)), [JR-000192-199], and "Residential Acute Behavioral Health Level of Care, Child or Adolescent" (No. ORG: B-902-RES (BHG)), [JR-000200-203].

As explained in Premera's Opposition to Plaintiffs' Motion for Summary Judgment, Premera did not misuse Milliman Guidelines. Dkt, 44, Premera MSJ Opp. at 3-10. Such Guidelines are one of many objective criteria that the plan looks at in determining medical necessity. *Id.* The Milliman Guidelines are widely-accepted by the industry as authoritative, and repeatedly cited by courts as support for their decisions. *Id.* at 5-10. Premera and the independent psychiatrists who reviewed Plaintiffs' claim and subsequent appeals considered many factors, including the entire record submitted by Plaintiffs along with the Milliman Guidelines. *Id.* at 3-10. Courts repeatedly recognize such use of the Milliman Guidelines is the standard of care. *Id.* at 5-10.

**B.    The AACAP Standard Plaintiffs Cite is Irrelevant to this Dispute.**

Plaintiffs argue that the Court should disregard the Milliman guidelines and instead look at a fragmentary quote from the Introduction to a document issued by the American Academy of Child and Adolescent Psychiatry (AACAP) and titled "Principles of Care for Treatment of Children and Adolescents with Mental Illnesses in Residential Treatment Centers." This is the

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT- 4

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

only "guideline" upon which they rely. Plaintiffs argue as follows: "In their opening brief, Todd and Suzanne demonstrated that Jon qualified for residential care using the AACAP criteria." Dkt 43, Plaintiffs' MSJ Opp. At 17 (citing Defendant's MSJ Dkt. 33 p. 13 at 2-3).

As discussed in Premera's Opposition to Plaintiffs' Motion for Summary judgment, Plaintiffs only quote the following, from the introduction: "When the treating clinician has considered less restrictive resources and determined that they are either unavailable or not appropriate for the patient's needs, it might be necessary for a child or adolescent to receive treatment in a psychiatric residential treatment center (RTC). In other cases the patient may have already received services in a less restrictive setting and they have not been successful." Dkt 44, Premera's MSJ Opp. at 12-13 (citing [Plaintiffs' Motion at 23 (citing Rec 00064)]).

Again the title itself states, this document's purpose is to establish a standard of care not for admission to residential treatment centers, but for residential care facilities in their treatment of children and adolescents with mental illness once the decision has been made to admit them to residential treatment centers. *See* Dkt 44, Premera's MSJ Opp. at 13 (quoting [JR-000065]). In any event, coming from the introduction, the quotation upon which Plaintiffs rely is so vague as to be of no use as a standard of care for determining whether residential care is medically necessary. There is no evidence that any physician or other expert who reviewed Plaintiffs' claim relied on this document, and it has not been cited by a single treatise or court or expert report. *See* Dkt 44, Premera's MSJ Opp. At 12-13.

C. **The Opinions of Plaintiffs' Alleged Treating Physicians Do Not Create an Issue of Fact.**

As previously discussed, Plaintiffs' treating provider evidence does not even create a genuine issue of material fact. *See* Premera's MSJ Opp. At 13-20. Plaintiffs' brief asserts, "Jon's initial psychiatric evaluation confirmed he needed residential care by using DSM criteria." *See* Premera's MSJ Opp. at 9. No citation follows this assertion, and there is no evidence to support it. Beyond this, Plaintiffs have not offered any evidence from a health care provider who treated Lillian at the time she was admitted to Elevations and at that time

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT- 5

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

evaluated whether residential treatment was medically necessary for Lillian. *See* Premera's MSJ Opp. At 13-20. Nor have they offered any evidence that any treating provider evaluated whether her continued stay at Elevations was medically necessary. *Id*.

Plaintiffs have offered two letters prepared by two health care providers who treated Lillian prior to her time at Elevations and therapy notes developed by Elevations as alleged evidence from "treating" health care providers that Lillian required residential care. *See* Premera's MSJ Opp. at 13-15. None of this evidence supports that Lillian's residential treatment at Elevations was medically necessary. *Id.* Evidence from Lillian's treating health care providers do not show that at any time any treating physician evaluated whether her admission or continued confinement at Elevations was medically necessary. *Id.* They provide conclusory opinions but do not address whether Lillian suffered acute symptoms widely recognized by psychiatrists as necessary to properly confine a child in residential treatment. *Id.* There is no analysis as to whether she could have been treated through less intense care. *Id.*

This is because Lillian exhibited none of the acute symptoms that support confinement in residential care. Premera's MSJ Opp. at 13-20. Indeed, Lillian wanted to go home and repeatedly told the therapists that there was nothing wrong with her and no reason she should be retained at Elevations. *Id.* at 15-20.

The progress and therapy notes do not show that Lillian's treatment at Elevations was medically necessary for the time period beginning on May 1, 2014. *Id.* Indeed, the overriding preoccupation of his parents and the Elevations personnel appears to have been Lillian's self-identification as transgender. *Id.*

### III. CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Premera and dismiss this case.

DATED this 14th day of November, 2018.

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP
Attorneys for Defendant
Premera Blue Cross Blue Shield of Alaska

By  */s/ Gwendolyn C. Payton*
　　Gwendolyn C. Payton
　　WSBA # 26752
　　gpayton@kilpatricktownsend.com
　　1420 Fifth Avenue, Suite 3700
　　Seattle, WA 98101
　　Telephone: (206) 467-9600
　　Facsimile: (206) 623-6793

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT- 7

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

# CERTIFICATE OF SERVICE

I, Gwendolyn C. Payton, hereby certify under penalty of perjury of the laws of the United States that on November 14, 2018, I caused to be served a copy of the attached document to the following person(s) in the manner indicated below at the following address(es):

Brian S. King
336 S 300 E STE 200
Salt Lake City, UT 84111
brian@briansking.com

John Walker Wood
The Wood Law Firm
800 5th Avenue, STE 4100
Seattle, WA 98104
john@woodfirm.com

☒ **by CM/ECF**
☐ **by Electronic Mail**
☐ **by Facsimile Transmission**
☐ **by First Class Mail**
☐ **by Hand Delivery**
☐ **by Overnight Delivery**

/s/ *Gwendolyn C. Payton*
Gwendolyn C. Payton

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT- 8

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946