THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

TODD R., SUZANNE R., and LILLIAN R.,

    Plaintiffs,

v.

PREMERA BLUE CROSS BLUE SHIELD OF ALASKA,

    Defendant.

No. 2:17-cv-01041-JLR

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

Plaintiffs, Todd R., Suzanne R., and Lilian R.[1], by and through their undersigned counsel, hereby submit their Reply to Defendant's Response and in Support of Plaintiffs' Motion for Summary Judgment.

## INTRODUCTION

The parties agree that this claim for wrongly denied medical benefits is being reviewed under a de novo standard of review. Jon experienced serious mental health issues that continued to escalate in spite of years of outpatient treatment with multiple providers. Once his behaviors put him at serious risk of harm, Jon's treating professionals in Alaska recommended residential care. Based on their experience with him, they felt

---

[1] In the Record, Lillian is referred to as Jon or Jonathan and for the remainder of this pleading, as with other pleadings, Lillian will be referred to as Jon.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

1

Jon's problems were chronic and only sub-acute inpatient care at a residential treatment facility would satisfactorily address his needs. Todd and Suzanne identified an appropriate treatment center and the medical staff at Elevations agreed to admit Jon on January 1, 2014. Soon after, a psychological evaluation was performed and the treating professional at Elevations recommended that Jon complete the program there.

Todd and Suzanne submitted a claim for medical treatment with health insurance they had purchased through Todd's employer from Premera Blue Cross Blue Shield of Alaska ("Premera"). Unfortunately Premera applied the wrong criteria to evaluate whether Jon's treatment was medically necessary, focused on information about Jon's condition at the time of his admission to Elevations rather than at the time the treatment in question was being provided, failed to contact Jon's treatment professionals before he was admitted at Elevations, and improperly denied coverage of his claim. In the pre-litigation appeal process the followed Premera's intial claim denial, Todd and Suzanne submitted all the necessary documents to demonstrate Jon's need for sub-acute care. But Premera and its reviewers continued to apply incorrect guidelines and ignored the information Todd and Suzanne provided. Ultimately, Premera denied all of Todd and Suzanne's appeals.

The record supports the medical necessity of Jon's treatment at Elevations. This Court should reverse Premera's denials and order it to provide coverage. Payment of the claims lives up to the promises made by Premera when it accepted Todd and Suzanne's premiums. Jon needed the treatment at Elevations and Premera should pay for it.

**RESPONSE TO FACTUAL AND PROCEDURAL BACKGROUND**

Because Premera failed to respond to the specific factual allegations from Plaintiffs' Motion for Summary Judgment, Plaintiffs incorporate by reference the factual

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

2 - 2

2

background in their Motion for Summary Judgment, Dkt. 37 at pages 2-13, and their Response to Defendant's Motion for Summary Judgment, Dkt. 43 at pages 3-6.

## ARGUMENT

### I. Premera Applied the Wrong Medical Necessity Criteria When It Denied Jon Coverage for His Treatment at Elevations.

Todd and Suzanne do not question that Milliman guidelines are widely used within the insurance world to evaluate medical necessity. The problem is Premera both erred in applying the guidelines and gave them disproportionate weight. From the beginning, Todd and Suzanne have argued that Premera used the wrong criteria.[2] Premera claimed it used the residential criteria for Post-Traumatic Stress Disorder and Residential Acute Behavioral Health Level of Care, Child or Adolescent.[3] The very criteria that Premera used explicitly states that they evaluate "[a]dmission to Residential Acute Level of Care."[4] Jon did not receive acute care at Elevations. Rather, his claim was for the treatment at the sub-acute inpatient level of care he received at Elevations.

When an insurer applies overly strict criteria based on incorrect guidelines, its decision to deny benefits is unjustifiable.[5] In *James F.*, as in this case, the insurer evaluated the medical necessity of sub-acute inpatient care based on acute care medical necessity criteria. The district court in that case held that the insurer had abused its discretion.

---

[2] Rec. 2455-2460
[3] Rec. 192-203
[4] Rec. 192, 200
[5] *James F. v. Cigna Behavioral Health*, 2010 U.S. Dist. LEXIS 136134, *16-19 (D. Utah)

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

3

In, *Butler v. United Healthcare of Tenn., Inc.*[6] the Sixth Circuit identified three errors common to this case. In *Butler*, the insurer had its reviewer "determine the medical necessity of Janie's treatment using a more restrictive guideline than the residential-rehabilitation guideline. Applying the incorrect guideline, [the physician reviewer] found that Janie's thirty-day rehabilitation was not medically necessary. He did not mention Janie's prior failed outpatient treatment in his decision. Nor did he explain why he disagreed with the recommendations of Janie's two treating physicians."[7] Premera did the same. It used acute residential guidelines instead of sub-acute guidelines for chronic problems.[8] Second, it did not mention the failed outpatient treatment before Todd and Suzanne tried sub-acute residential care.[9] Third, Premera never explained why it disagreed with the opinions of the treating physicians, particularly the recommendation to complete residential treatment.[10]

An additional problem specific to this case arises because Jon had been admitted to Elevations on January 1, 2014.[11] But due to a change in insurers, Premera's responsibility to cover Jon's treatment did not arise until May 1, 2014.[12] Premera's application of admission criteria to Jon, who had been receiving treatment at Elevations for several months before Premera came along, is facially wrong.[13] Premera compounded its error because it evaluated admission to an acute residential setting rather than the actual sub-acute treatment that Jon was receiving. Nowhere in the record does Premera or its external reviewer refer to *continued care*, rather than admission, criteria.

---

[6] 764 F.3d 563 (6th Cir. 2014)
[7] 764 F.3d at 566 (citations omitted)
[8] Rec. 192-203
[9] Rec. 49-53, 2410-2412, 7151-7154, 11748-11752
[10] *Id.*
[11] Rec. 405
[12] Rec. 5
[13] Rec. 192, 200

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

4

In fact, Premera persisted in the application of incorrect guidelines even after Todd and Suzanne provided them with alternative criteria from the American Academy of Child and Adolescent Psychiatry.[14] Those criteria state, "[w]hen the treating clinician has considered less restrictive resources and determined that they are either unavailable or not appropriate for the patient's needs, it might be necessary for a child or adolescent to receive treatment in a psychiatric residential treatment center (RTC). In other cases the patient may have already received services in a less restrictive setting and they have not been successful."[15]

Jon's treating clinicians before Elevations had considered less restrictive levels of care.[16] Not only did they consider them, they provided outpatient therapy at various levels of intensity for years. However, Jon's behavior declined throughout that entire period. His risky behaviors—refusing medication, leaving school, suicidal threats, running away, cutting, and isolation[17]–escalated to the point that his health care providers concluded that outpatient treatment was not reducing his problematic behavior. The only option for Jon was residential care.[18] The AACAP principles for residential treatment closely describe Jon's scenario. It was not a question of availability for outpatient care. Rather, his treatment physician and other health care providers in Alaska simply concluded that the treatment Jon was receiving in a less restrictive level of care than sub-acute inpatient was unsuccessful in providing the necessary relief from his symptoms. Premera and its outside reviewer ignored those realities when they denied Jon's claims.

---

[14] Rec. 2458-60
[15] Rec. 00064
[16] Rec. 403-405, 407-408
[17] Rec.11748-11749
[18] Rec. 404-405

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

28- 5

5

## II. Premera Gave Undue Weight To Screening Guidelines and Ignored Undisputed Facts in the Medical Records about the Severity of Jon's Symptoms and His Failed Outpatient Care.

Premera seems to have lost sight of the fact that guidelines, like Milliman's, are screening tools. Setting aside the fact that Premera used the wrong tool, Premera acknowledged that it used the guidelines to develop its medical policies.[19] Such a procedure had the effect of conflating a screening tool into a hard and fast policy where the failure to meet the guidelines automatically resulted in a denied claim. No longer is the guideline a factor, it becomes an ironclad rule that ignored the need to evaluate the individual needs of the patient in question and treat with some greater weight the information from the professionals who were treating Jon and knew him best.

Premera's failure to accept the recommendations of Elevations' professionals that Jon's treatment there was medically necessary confirms the undue weight Premera gave to the Milliman guidelines. Had Premera used them as a screening tool, it would have provided an analysis for *why* the reviewers rejected the treating professionals' recommendations and did not meet the criteria. Instead, Premera's reviewers stated, "Premera's determination is based on an absence of record of severe symptoms which could not have been treated in an intensive outpatient management program."[20] The problem is that this is a bare conclusion with no analysis to back it up. The conclusion ignored the fact that Jon's outpatient treatment had failed and that he continued to experience chronic problems with anxiety, suicidal ideation, and depression that did not respond to outpatient treatment.[21] Because Premera ignored the undisputed facts in the

---

[19] Rec. 2411
[20] 7152
[21] Rec. 36, 427-430

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

6 - 6

the medical records and the recommendations of Jon's treating clinicians, it made the wrong decision when it denied his benefits.

Todd and Suzanne do not dispute that Milliman guidelines can aid in determining the appropriate level of care when the proper criteria are used at the proper time. When Premera first denied Jon's claim, Todd and Suzanne immediately referred them to the AACAP principles to help Premera provide a principled and sound analysis regarding the medical necessity of Jon's treatment.[22] Not only are the AACAP principles relevant, they shed the brightest light on why Jon needed sub-acute residential treatment. The AACAP principles clarify that admission criteria should not be applied when assessing ongoing treatment.[23] Further, the AACAP principles identify the specific need of a reviewer to evaluate prior treatment outcomes.[24] Specifically, when outpatient care has failed and symptoms persist, treatment in residential treatment centers may be medically necessary.[25]

In *Wiwel v. IBM*,[26] as here, medical reviewers used the wrong medical necessity criteria. The *Wiwel* court explained how the insurer misunderstood the critical role a sub-acute residential treatment center played in providing medically necessary care.

> Finally, and most importantly, where the IPRO opinion [external review] rests on its assessment that E.W.'s self-cutting behavior and thoughts of suicide were subdued by March 10, 2014, it fails entirely to address a conspicuous confounding variable, namely, the influence that La Europa, itself, may have brought to bear upon E.W.'s behavior. That is, where the evidence of record demonstrates that before her admission to La Europa, E.W.'s behavior was destructive, and while in residency at La Europa, E.W.'s behavior was stable, (see e.g., DE 32 at 391 (noting, among other things, E.W. denying suicide plan or intent as of February

---

[22] Rec. 2458-2460, 000064-74
[23] Rec. 67-68
[24] Rec. 64
[25] *Id.*
[26] *Wiwel v. IBM Med. & Dental Ben. Plans for Regular Full-Time & Part-Time Employees*, 2017 U.S. Dist. LEXIS 46377, *20-21 (E.D.N.Car. Mar. 29, 2017)

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR
- 7

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

7

28, 2014), the IPRO opinion does not adequately state reasons to conclude that in the absence of La Europa's care, E.W.'s behavior would have remained stable after March 10, 2014.[27]

In *Wiwel* the insurer ignored the estimated length of treatment, and used statements at the time of admission that suggested the child could be treated at a lower level when it denied the claim. *Wiwel* concluded that the insurer had failed to show how positive statements about improved behavior while in the residential treatment center, without more in-depth analysis, provided substantial evidence that a lower level of care was justified.[28] In like manner, Premera failed to even address whether the reduction of symptoms occurred because of the safety protocol that existed at Elevations. Similarly, it ignored the prior treatment recommendations for residential treatment to address Jon's behaviors. And, just as in *Wiwel*, Premera and the external reviewer ignored the admission psychiatric recommendation, the psychological recommendation to complete residential treatment, and the ongoing treatment notes that reflected a need for ongoing care. This case shows how the failure to use the correct guidelines resulted in an improperly denied claim.

> III. **Because They Provide the Most Complete Review and Analysis of Jon's Problems, the Opinions of his Treating Clinicians Show by a Preponderance of the Evidence that Jon's Treatment at Elevations was Medically Necessary.**

This Court does not need to give special weight to Jon's prior therapists to validate the importance of their recommendations. Unlike Premera's analysis, Jon's treating clinician records and opinions documented why residential treatment was necessary. Premera's denial letters acknowledged that "Jonathan was admitted to a

---

[27] *Id.* At *11-12.
[28] Wiwel at 14-15

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

8

residential treatment center due to chronic difficulties"[29] and not acute issues that "require stabilization in the context of a short term stay."[30] Yet Premera never explains why it used an acute guideline to determine treatment for chronic difficulties. The professionals who treated Jon before and at Elevations provided information that went to the heart of whether Jon needed subacute residential care.

The Ninth Circuit recently held that ERISA plans may not deny coverage for residential treatment on the basis that sub-acute inpatient treatment of mental health and substance use disorders is not covered unless they also exclude from coverage sub-acute inpatient care for medical/surgical conditions.[31] In this case, it is undisputed that Premera provides coverage for sub-acute inpatient treatment for medical/surgical conditions in such facilities as skilled nursing facilities or hospice care.[32] Consequently, MHPAEA precludes any ability by Premera to argue that it does not cover treatment provided for sub-acute inpatient treatment in residential treatment such as Elevations. Premera had no excuse to not evaluate the medical necessity of Jon's treatment using sub-acute criteria.

Dr. Ghosh and Mr. Sumner's recommendations conformed with the medical necessity requirements outlined in the Plan. Each provided explanations that show the exercise of prudent judgment. Given that the recommendation for residential care was confirmed at the time of admission and by a subsequent comprehensive psychological evaluation, Ghosh's recommendation agreed with generally accepted standards of medical practice. Because lower levels of care had failed, residential treatment was

---

[29] Rec. 2410
[30] Rec. 7152
[31] *Danny P. v. Catholic Health Initiatives*, 891 F.3d 1155, 1158-1159 (9th Cir. 2018) (excluding coverage for treatment for sub-acute inpatient mental health and substance use disorders while covering treatment for sub-acute inpatient treatment for medical/surgical conditions at skilled nursing facilities violates the federal Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"))
[32] Rec. 7116 (referencing coverage for hospice care)

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

9

appropriate in type, frequency and extent. Finally, the out-of-state treatment was not offered for convenience. And because lower levels of care had already failed, Premera was wrong to conclude that less intensive therapies would produce equivalent therapeutic results. Empirical evidence supported the need for sub-acute residential care.

While Premera claims that "[t]here is no evidence that, once she [sic] was admitted to Elevations, he was ever evaluated for a determination that his residential stay should continue." This is false. Jon was admitted on January 1, 2014.[33] Jon underwent a comprehensive evaluation by Dr. Brockbank on February 8, 2014 that confirmed the need to complete residential treatment.[34] Dr. Brockbank finalized her evaluation on March 20, 2014.[35] Further, Jon was assigned to a specific treatment team and psychiatric provider who continued to evaluate his need for residential treatment consistent with the duties of every mental health or medical provider.[36] Nevertheless Premera denied claims for treatment as early as a month and a half after Dr. Brockbank finalized her evaluation. In its pleadings, Premera claims that there was no evidence. Todd and Suzanne suggest that what they have provided was more than enough.

Each of Premera's denials suffers from similar errors. First, the initial denial letter outlined as a basis for the denial a standard for acute residential care.[37] The reason this was error has been outlined above.

Second, Premera failed to attribute Jon's improvement and safety to the treatment and environment at Elevations. Without accounting for the safety factors provided by the residential treatment center, Premera could not reasonably conclude that a lower level of

---

[33] Rec. 405
[34] Rec. 410
[35] Rec. 430
[36] Rec. 2961
[37] Rec. 49

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

10

care would have been effective. This is especially understood in light of the rationale provide by the *Wiwel* court and the AACAP rationale. The *Wiwel* case illustrates why such a lack of attribution creates a fundamental flaw to the basis for denying a claim for residential treatment.

Third, Premera never addressed why it disagreed with the valid opinions of competent providers who based their opinions on an examination of Jon and peer reviewed material and instruments like the Diagnostic and Statistical Manual of Mental Disorders and reliable psychological testing instruments.[38] While the external reviewer did not use the Milliman guidelines, the "Records reviewed"[39] portion of the review reflects that it didn't consider the plan language either. It used a different medical necessity standard than the one provided by the Plan. Like Premera, the external reviewer also failed to analyze or give weight to the safety provided by Elevations and the recommendations from Jon's outpatient therapists who found that treatment failed.

## CONCLUSION

When the insurance company erroneously denied a claim because it applied the wrong guidelines, its decision should be reversed. Under a de novo review, this Court has the chance to make the right decision without any deference to Premera. Because Jon clearly needed the subacute care, Premera should cover the claim for treatment.

DATED this 14th day of November, 2018.

RESPECTFULLY SUBMITTED,

    s/ Brian S. King
Brian S. King
Attorney for Plaintiffs

---

[38] Rec. 02957, 410
[39] Rec. 11750

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

11

# CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States, that on the 14th day of November, 2018, the foregoing document was presented to the Clerk of the Court for filing and uploading to the Court's CM/ECF system. In accordance with the ECF registration agreement and the Court's rules, the Clerk of the Court will send email notification of this filing to the following attorney for the defendant:

Gwendolyn C. Payton
Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
gpayton@kilpatricktownsend.com

DATED: November 14, 2018.

s/ John Walker Wood
John Walker Wood (WSBA #39120)
The Wood Law Firm, PLLC
800 5th Ave, Suite 4100
Seattle, WA 98104
(206) 447-1342 (office)
(206) 577-5380 (fax)
Email: john@woodfirm.com

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

12