UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| TODD R., et al., | CASE NO. C17-1041JLR |
|---|---|
| Plaintiffs, | ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION AND PLAINTIFFS' MOTIONS FOR ATTORNEY'S FEES, PREJUDGMENT INTEREST, AND ENTRY OF JUDGMENT |
| v. | |
| PREMERA BLUE CROSS BLUE SHIELD OF ALASKA, | |
| Defendant. | |

## I. INTRODUCTION

Before the court are three motions: (1) Defendant Premera Blue Cross Shield of Alaska's ("Premera") motion for reconsideration (MFR (Dkt. # 52)); (2) Plaintiffs Todd R., Suzanne R., and Lillian R.'s (collectively, "Plaintiffs") motion for attorney's fees (MFF (Dkt. # 56)); and (3) Plaintiffs' motion for entry of judgment and an award of prejudgment interest (MFJ (Dkt. # 61)). The court has considered the motions, the parties' submissions in support of and opposition to the motions, the relevant portions of

the record, and the applicable law. Being fully advised,[1] the court DENIES Premera's

motion for reconsideration, GRANTS Plaintiffs' motion for attorney's fees, and

GRANTS in part and DENIES in part Plaintiffs' motion for entry of judgment and an

award of prejudgment interest.

## II. BACKGROUND

In this action, Plaintiffs sought review of Premera's denial of benefits under a

group health benefits plan ("the Plan"), which is governed by the Employment

Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. (*See* Compl.

(Dkt. # 2) ¶¶ 2, 9, at 7-8.) Specifically, Plaintiffs asked the court to review Premera's

decision declining to pay for a portion of Lillian R.'s treatment at Elevations Residential

Treatment Center ("Elevations")[2] as not medically necessary. (*See generally id.*) On

September 14, 2018, the parties placed the issue before the court in cross motions for

summary judgment. (*See* Plf. MSJ (Dkt. # 37); Def. MSJ (Dkt. # 33).)

On January 15, 2019, the court issued an order scheduling a January 23, 2019,

hearing on the parties' motions. (1/15/19 Order (Dkt. # 48) at 1.) The court directed the

parties "to come prepared to discuss" certain issues "that the parties did not fully brief."

(*Id.*) Specifically, the court directed the parties to address whether "Lillian R's treatment

---

[1] Plaintiffs request oral argument on their motions for attorney's fees and for entry of judgment (*see* MFF at 1; MFJ at 1), but the court does not consider oral argument to be helpful to its disposition of these motions, *see* Local Rules W.D. Wash. LCR 7(b)(4). No party requests oral argument on Premera's motion for reconsideration. (*See* MFR at 1; MFR Resp. (Dkt. # 64) at 1.) Accordingly, the court decides all three motions without oral argument.

[2] Previously, Elevations was known as Island View Residential Treatment Center. (AR (Dkt. # 36) (sealed) at 000023.) The court refers to the facility solely as Elevations.

at Elevations . . . from May 1, 2014, until her discharge on June 21, 2015, [was] medically necessary based on the sixth provision of . . . [Premera's] Medical Policy,[3] which provides that residential care admission is appropriate for an adolescent where the '[p]atient has currently stabilized during [an] inpatient treatment stay for severe symptoms or behavior and requires a structured setting with continued around-the-clock behavioral care.'" (*Id.* at 3 (quoting AR at 007137 (first and second alterations and footnote added; third and fourth alterations in original).) The court also directed that, "[i]n assessing the applicability of this provision," the parties should note that Dr. Shubu Ghosh refers to "residential care" as "inpatient" and Premera repeatedly describes Lillian R.'s "residential care" at Elevations as "inpatient" throughout its briefing. (*Id.*) The court further directed the parties "to consider whether . . . Dr. Laura B. Brockbank's February 2014 evaluation of Lillian R. supports the conclusion that Lillian R.'s continued treatment at Elevations was medically necessary based on the sixth provision of Premera's Medical Policy." (*Id.* at 3-4.)

At the January 23, 2019, hearing, Premera's counsel admitted that the terms "inpatient" and "residential" are used interchangeably "in the medical community and in the standard of care," and that Lillian R.'s treatment at Elevations "is inpatient, not outpatient" because "[s]he is not going home at night . . . ." (1/23/19 Trans. of Hr. (Dkt. # 51) (sealed) at 10:11-18.) However, Premera's counsel also argued that the term

---

[3] Premera's criteria for evaluating the medical necessity of residential treatment is set forth in its Medical Policy, which is entitled: "Residential Acute Behavioral Health Level of Care, Child or Adolescent." (*See* AR at 007137-40.) The Medical Policy is incorporated into the Plan. (*See* 1/30/19 Order (Dkt. # 50) at 7.)

"inpatient," as it is used in the sixth provision of Premera's Medical Policy, is equivalent to hospitalization. (*See id.* at 11:7-10 ("So there is a medical necessity policy that deals with inpatient hospitalization for . . . mental health treatment for adolescents. It is different than the residential treatment policy that we are talking about today.").) Premera's counsel suggested that the court could go "online" to see the distinction between "inpatient" and "residential" care as those terms are used in additional portions of the Medical Policy that are not contained in the record. (*See id.* at 11:16-21.) Premera's counsel, however, never asked the court for permission to supplement the administrative record or submit additional evidence into the record. (*See generally id.*)

On January 30, 2019, the court issued its written findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a) based on a *de novo* review of the record. (*See generally* 1/30/19 Order.) The court determined that Lillian R.'s treatment at Elevations from May 1, 2014, to June 21, 2015, was "medically necessary" and, therefore, covered under the Plan. (*Id.* at 25-38.) Under the Medical Policy's sixth provision, an adolescent's treatment in residential care is medically necessary if the "[p]atient has currently stabilized during [an] inpatient treatment stay for severe symptoms or behavior and requires a structured setting with continued around-the-clock behavioral care." (AR at 007137.) The court determined that Lillian R.'s treatment at Elevations fell within this criterion and therefore was covered under the Plan. (1/30/19 Order at 25-38.)

On February 13, 2019, Premera moved for reconsideration of the court's ruling. (*See generally* MFR.) Premera argues that the Medical Policy's sixth prong does not

apply to Lillian R.'s treatment at Elevations because the phrase "inpatient treatment stay" in the sixth prong refers solely to hospitalizations, and Lillian R. was never hospitalized prior to her admission to Elevations. (*See id.* at 5 (stating that "[t]he sixth prong of the Medical Policy applies to circumstances in which the patient is first hospitalizaed and then transferred to a residential treatment center to stabilize"); *see also* MFR Reply (Dkt. # 68) at 1 (stating that Premera interprets "the sixth prong of the Medical Policy as applying only after hospitalization for acute symptoms")).) Premera argues that the court should reconsider its ruling in light of "new facts" Premera submits with its motion. Specifically, Premera submits additional portions of the Medical Policy, which describe various "Behavioral Health Levels of Care." (*See, e.g.*, 2/13/18 Payton Decl. (Dkt. ## 53 (redacted), 55 (sealed)) ¶ 2, Ex. 4; 3/8/18 Payton Decl. (Dkt. ## 69 (redacted), 71 (sealed) ¶ 2, Ex. 6).) The highest level of care described in the document is "inpatient care" and the second highest level is "residential care."[4] (*See* 2/13/18 Payton Decl. ¶ 2, Ex. 4 at 1; 3/8/18 Payton Decl. ¶ 2, Ex. 6 at 1.) Plaintiffs oppose Premera's motion. (MFR Resp.)

In addition to Premera's motion for reconsideration, Plaintiffs filed two motions. First, Plaintiffs ask the court for an award of attorney's fees in the amount of $50,437.50. (*See generally* MFF.) Premera does not challenge the reasonableness of this figure; rather, Premera argues that any award of fees is improper because there is no evidence that Premera "acted with culpability or bad faith." (MFF Resp. (Dkt. # 59) at 2.) Second,

//

---

[4] Premera also submits the Medical Policy's guidelines for admission to inpatient level of care for a child or adolescent. (*See* 2/13/19 Payton Decl. ¶ 3, Ex. 5; 3/8/19 Payton Decl. ¶ 3, Ex. 7.)

Plaintiffs ask the court for entry of judgment in the amount of $123,849.00, which represents the amount that they paid for Lillian R.'s treatment at Elevations from May 1, 2014, to June 21, 2015. (MFJ at 2.) They also seek an award of prejudgment interest. (*Id.* at 3-4.) Premera does not oppose Plaintiffs' request for judgment in the amount of $123,849.00 (MFJ Resp. (Dkt. # 75) at 1), but does oppose Plaintiffs' request for prejudgment interest, and if awarded, argues that the interest rate Plaintiffs' seek is excessive (*see id.* at 2-6).

The court will address each motion in turn.

### III.  ANALYSIS

**A.     Premera's Motion for Reconsideration**

The court first lays out the applicable standards of review. Motions for reconsideration "are disfavored." Local Rules W.D. Wash. LCR 7(h)(1). Ordinarily, the court will deny such motions in the absence of a showing of (1) "manifest error in the prior ruling," or (2) "new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence." *Id*. In addition, the parties agree that *de novo* is the proper standard of review for the court's underlying consideration of Premera's denial of benefits and its review of the administrative record. (*See* 1/30/19 Order at 3 (citing Def. MSJ at 10; Plf. MSJ at 14; Plf. MSJ Resp. (Dkt. # 43) at 2).) When a district court "reviews a plan administrator's decision under the de novo standard of review, the burden is placed on the claimant." *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010). "Under a de novo review, the rules ordinarily associated with the interpretation of insurance policies apply." *Leight v. Union Sec. Ins.*

*Co.*, 189 F. Supp. 3d 1039, 1047 (D. Or. 2016) (citing *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 799 (9th Cir. 1997)). "Accordingly, [the court] may construe the Plan in accordance with the rules normally applied to insurance policies." *Lang*, 125 F.3d at 799. This means that the court construes ambiguities in the Plan against Premera and adopts reasonable interpretations advanced by Plaintiffs. *See id.*

Premera argues that the court should reconsider its earlier ruling granting benefits under the Plan to Plaintiffs "based on evidence that Premera is submitting at this time— the entire Medical Policy." (MFR at 2.) Premera, however, never establishes that "the entire Medical Policy" constitutes "new facts . . . which could not have been brought to [the court's] attention earlier with reasonable diligence." Local Rules W.D. Wash. LCR 7(h)(1). Indeed, the portions of the Medical Policy that Premera now submits are not "new" evidence. Premera had these additional portions of the Medical Policy in its possession all along. Instead, Premera argues that the court should consider these additional portions because "Premera had no reason to foresee this Court's application and interpretation of the sixth prong." (MFR Reply at 1; *see also id.* at 4 ("Premera had no reasons to address this issue before now . . . .").) Premera's counsel mischaracterizes the record.[5] As detailed above, more than a week prior to the hearing on the parties'

_____

[5] Premera also mischaracterizes the record when it states that "neither party addressed or analyzed the sixth prong throughout the entire administrative proceeding . . . ." (MFR Reply at 4.) In its November 18, 2014, denial letter to Plaintiffs, Premera specifically refers to the sixth prong of the Medical Policy as a potential basis for finding Lillian R.'s treatment was "medically necessary." (*See* AR at 002489.) Nevertheless, Premera ultimately concludes that the sixth prong does not support medical necessity because "[i]nformation from [Lillian's] provider d[id]

briefs, the court notified the parties that it was considering whether "Lillian R.'s treatment at Elevations . . . from May 1, 2014, until her discharge on June 21, 2015, [was] medically necessary based on the sixth provision of . . . [Premera's] Medical Policy," and the court directed the parties to come to the hearing prepared to discuss this issue. (1/15/19 Order at 1, 3.)  Indeed, the court issued its January 15, 2019, order specifically to notify the parties, provide them with an opportunity to supplement the record with additional argument or evidence related to the Medical Policy's sixth provision, and avoid the type of motion Premera now brings.

Yet, at no time during the January 23, 2019, hearing or following the court's January 15, 2019, notice did Premera ask to supplement the administrative record to include the additional portions of the Medical Policy that Premera now contends are critical to the court's analysis of the Medical Policy's sixth prong.  At most during the hearing, Premera's counsel suggested that the court could go "online" to review additional portions of the Medical Policy because "different carriers" had published the entire Medical Policy online.  (1/23/19 Trans. of Hr. at 11:16-21.)  Of course, neither material contained on Premera's website nor on another insurance company's website would be a proper subject for judicial notice, and if the court had independently searched for, reviewed, and relied upon such material, it would have likely committed reversible

_____

not show evidence of . . . need for a structured setting and continued around-the-clock care to treat a severe mental health condition that partly stabilized during inpatient care." (*Id.* at 002490.)  Thus, contrary to Premera's assertion, it did analyze the sixth prong of the Medical Policy in the administrative proceeding.  On *de novo* review, the court simply came to a different conclusion on whether the evidence supported a finding of "medical necessity" under the sixth prong of Premera's Medical Policy.  (*See* 1/30/18 Order at 25-38.)

error.  *See Monkton, Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 n.1 (5th Cir. 2014) (noting that a party's website, which the district court had reviewed, did not appear to be a proper subject for judicial notice and declining to consider such material on appeal); *Gaza v. LTD Fin. Servs., L.P.*, No. 8:14-CV-1012-T-30JSS, 2015 WL 5009741, at *2 (M.D. Fla. Aug. 24, 2015) ("Courts have long recognized that private, non-governmental websites are not the proper subject of judicial notice.") (citing *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1274 (11th Cir. 2014)); *Nassar v. Nassar*, No. 3:14-CV-1501-J-34MCR, 2017 WL 26859, at *5 (M.D. Fla. Jan. 3, 2017), *aff'd*, 708 F. App'x 615 (11th Cir. 2017) ("In general, non-governmental websites are not proper subjects of judicial notice.").  Because the court notified Premera that it was considering whether the sixth provision of the Medical Policy provided coverage to Plaintiffs, Premera had an opportunity to ask the court to supplement the record with the additional material that Premera now deems relevant to that determination.  Because Premera failed to do so, it cannot now argue that the additional provisions of the Medical Policy represent "new facts . . . which could not have been brought to [the court's] attention earlier with reasonable diligence."  *See* W.D. Wash. Local Rule LCR 7(h)(1).

However, even if the court were to consider the materials that Premera now submits, it would not reconsider its decision.  Premera argues that "[t]he whole Medical Policy conclusively establishes that the word 'inpatient' in the sixth prong is referring to inpatient hospitalization."  (MFR Reply at 2.)  The court disagrees.  First, contrary to Premera's statement, the definition of "inpatient care" that Premera now provides from the Medical Policy expressly includes units "whether they are located in general hospitals

or freestanding behavioral health facilities." (3/8/19 Payton Decl. ¶ 2, Ex. 6 at 2.[6])  Thus, even under the additional provisions of the Medical Policy that Premera now submits, "inpatient care" expressly refers to a broader category of care than solely "inpatient hospitalization."

Second, although the Medical Policy discusses "discrete categories" of care—including "inpatient" and "residential care," it also expressly recognizes that the "level of care might be represented by a continuum rather than discrete categories." (*Id.*)  Indeed, the categories themselves are not strictly defined but rather tend to blend into one another.  For example, "inpatient care" is described as "generally" locked and staffed by round-the-clock nurses with attending physicians "typically" rounding at least 5 days a week; whereas at residential care doctors "typically round less often, and nurses are generally on site for fewer hours each day than at an inpatient unit." (*Id.*)  Thus, there is overlap between the types of care that "generally" or "typically" constitute "inpatient" and "residential" care.  (*See id.*)  This creates ambiguity in how the terms "inpatient" and "residential" are defined and should be applied, and the court must construe that ambiguity against Premera.  *See Lang*, 125 F.3d at 799.  Thus, even considering the additional portions of the Medical Policy that Premera submits with its motion, the court does not conclude that the term "inpatient" as it is used in the Medical Policy's sixth prong refers solely to hospitalization.

//

---

[6] When referring to this exhibit, the court refers to the pages numbers generated by the court's electronic filing system.

More importantly, the Plan itself does not define "inpatient" as being limited to hospital admissions, and Premera never addresses this language in its motion for reconsideration. (*See generally* MFR.) As the court explained in detail in its January 30, 2019, order, the Plan expressly defines the term "inpatient" as "[s]omeone who is admitted to a healthcare facility for an overnight stay." (1/30/10 Order at 29 (citing AR at 011722).) The definition contains no express limitation to an overnight stay in a hospital. Further, the Plan defines "hospital" as only one type of healthcare facility that meets four specific criteria. (*See id.* (citing AR at 011722).) The definition goes onto state that "[a] facility is *not* considered a hospital if it operates mainly . . . [a]s a residential treatment center." (*Id.* (citing AR at 011722).) Reading these provisions together, the term "inpatient" necessarily includes more than just a person who is admitted to a hospital; the term must apply persons who are admitted to other types of healthcare facilities. Premera never challenges the court's determination that Elevations is a "healthcare facility." (*See* 1/30/19 Order at 30; *see generally* MFR.) Thus, the court finds no reason to reconsider its ruling that Lillian R.'s initial admission to Elevations qualifies as an 'inpatient treatment stay" under the sixth prong of Premera's Medical Policy. Based on the foregoing analysis, the court DENIES Premera's motion for reconsideration.

**B.     Plaintiffs' Motion for Attorney's Fees**

Plaintiffs seek an award of attorney's fees under 29 U.S.C. § 1132(g)(1) in the amount of $50,437.50 for work their attorneys performed between the date the complaint was filed and the January 30, 2019, decision by the court. (*See generally* MFF.) Premera

opposes the motion but does not challenge the reasonableness of the amount of the award

Plaintiffs seek. (*See generally* MFF Resp. (Dkt. # 59).)

Under ERISA's civil enforcement provision, 29 U.S.C. § 1132 (g)(1), courts have

discretion to award reasonable attorney's fees and costs, where a party has achieved

"some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560

U.S. 242, 256 (2010). In this case, there is no dispute that Plaintiffs achieved success on

the merits. (*See generally* MFF Resp.; 1/30/19 Order at 37-38 (granting Plaintiffs'

motion, concluding that Lillian R.'s treatment was medically necessary under the Plan,

and entering judgment on that issue in favor of Lillian R.).)

Once a court determines that a litigant has achieved "some degree of success on

the merits," the court must determine whether the five factors set forth in *Hummell v. S.E.*

*Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980), weigh in favor of awarding the litigant fees

and costs. *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th

Cir. 2010) (quoting 29 U.S.C. § 1132(g)(1)). The *Hummell* factors are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability
> of the opposing parties to satisfy an award of fees; (3) whether an award of
> fees against the opposing parties would deter others from acting under similar
> circumstances; (4) whether the parties requesting fees sought to benefit all
> participants and beneficiaries of an ERISA plan or to resolve a significant
> legal question regarding ERISA; and (5) the relative merits of the parties'
> positions.

*Hummell*, 634 F.2d at 453. In applying these factors, the court should "keep at the

forefront ERISA's remedial purposes that 'should be liberally construed in favor of

protecting participants in employee benefit plans.'" *McElwaine v. US West, Inc.*, 176

F.3d 1167, 1172 (9th Cir. 1999) (quoting *Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587,

589 (9th Cir. 1983)). Not all *Hummell* factors must weigh in favor of awarding fees, and no single factor is dispositive. *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984). Significantly, the Ninth Circuit instructs that "a successful ERISA participant 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *McElwaine*, 176 F.3d at 1172 (quoting *Smith*, 746 F.2d at 589). The court now applies the factors to Plaintiffs' request.

      1.   Bad Faith or Culpability

      The first *Hummell* factor is the degree of the opposing party's culpability or bad faith. 634 F.2d at 453. Although culpability or bad faith is the first factor, "bad faith is not a prerequisite to an ERISA fee award." *McElwaine*, 176 F.3d at 1173 (citing *Smith*, 746 F.2d at 590). Nevertheless, Premera argues extensively that it did not engage in bad faith. (MFF Resp. at 2-11.) The court agrees. Indeed, Plaintiffs never argue that Premera engaged in "bad faith"; rather, they argue that Premera's conduct was "culpable." (MFF at 4; MFF Reply (Dkt. # 65) at 1-2.)

      Plaintiffs argue that there is a distinction between "bad faith" and "culpability," and although Premera may not have engaged in bad faith, Premera's conduct was culpable. (MFF at 4 (citing *Pease v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 450 (2d Cir. 2006)).) Plaintiffs did not refer the court to Ninth Circuit authority on this point, and the court finds none. Nevertheless, the Second Circuit holds that "'culpability' and 'bad faith' are distinct standards." *Pease*, 449 F.3d at 450; *see also McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 257 (3d Cir. 1994) (likewise distinguishing between "bad faith" and "culpability"). The Third Circuit explains that,

although "bad faith normally connotes an ulterior motive or sinister purpose, . . . [a]

losing party may be culpable . . . without having acted with an ulterior motive."

*McPherson*, 33 F.3d at 256. The Third Circuit further describes "culpable conduct" as

"commonly understood" to mean "blameable," "censurable," or "at fault." *Id.* at 257

(citing Black's Law Dictionary (6th ed. 1990)). It "normally involves something more

than simple negligence" and "implies that the act or conduct spoken of is reprehensible or

wrong, but [does] not . . . involve[] malice or a guilty purpose." *Id.*; *see also Flaaen v.*

*Principal Life Ins. Co., No.* C15-5899 BHS, 2017 WL 6527144, at *2 (W.D. Wash. Dec.

21, 2017), *appeal dismissed sub nom. Flaaen v. McLane Co., Inc.*, No. 17-35969, 2018

WL 1941322 (9th Cir. Mar. 14, 2018) (recognizing a distinction between "bad faith" and

"culpability" and applying the standard for culpability described above). The court finds

this authority persuasive.

Applying the distinction between "bad faith" and "culpability" discussed above,

the *Flaaen* court concluded that, although an insurer's conduct in failing to address or

ignoring the insured's evidence while processing the insured's claim did not rise to "bad

faith," it did constitute "culpable conduct." *Flaaen*, 2017 WL 6527144, at *2. Further,

the fact that the insurer continued the same conduct in briefing before the court bolstered

the court's conclusion. *Id.*

Similar to *Flaaen*, the court concludes that Premera engaged in culpable conduct

when it ignored or failed to adequately address medical records from Dr. Laura B.

Brockbank, an examining psychologist, who conducted a "comprehensive psychological

evaluation" of Lillian R. in February 2014. (*See* 1/30/19 Order at 12, 27, 31-37.)

Further, as in *Flaaen*, Premera continued this conduct before the court by failing to discuss Dr. Brockbank's evaluation in any of its briefing leading up to the court's January 30, 2019, order. (*See id.* at 33.) Accordingly, the court concludes that Premera's failure to assess and adequately address undisputed medical evidence submitted by Plaintiffs that supports coverage satisfies the "culpability" portion of the first *Hummell* factor and, therefore, this factor weighs in favor of an attorney's fee award.

    2.  <u>Ability to Satisfy an Award of Fees</u>

The second *Hummel* factor is "the ability of the opposing part[y] to satisfy an award of fees." 634 F.2d at 453. Plaintiffs assert that Premera is a large insurance company with the ability to pay such an award. (MFF at 4.) Premera does not dispute this assertion. (*See generally* MFF Resp.) Although many courts consider this factor to be the least persuasive of the five, *see e.g.*, *Mazet v. Halliburton Com. Long-Term Disability Plan*, No. CV-04-0493PHXFJM, 2009 WL 981019, at *2 (D. Ariz. Apr. 9, 2009) ("An ability to pay, without more, is clearly insufficient to support an award of fees."), it still favors an award when viewed in combination with the other factors.

    3.  <u>Deterrence</u>

Under the third *Hummell* factor, the court considers "whether an award of fees against the opposing part[y] would deter others from acting under similar circumstances." 634 F.2d at 453. Premera argues that "[t]here is nothing to deter" because it followed the direction of an Independent Review Organization ("IRO") in the third and final level of Plaintiffs' administrative appeal as it is required to do by law. (MFF Resp. at 11.) However, Plaintiffs may not have been required to take their claim through three levels of

administrative appeals if Premera had properly considered the medical evidence Plaintiffs submitted in the first place—specifically, the opinion of Lillian R.'s examining psychologist, Dr. Brockbank, concerning the medical necessity of Lillian R.'s care. *See, e.g.*, *Flaaen*, 2017 WL 6527144, at *2 ("To the extent that [the insurer] has repeatedly ignored evidence submitted by beneficiaries, the conduct should be deterred."); *Paulson v. Principal Life Ins. Co*., No. 16-5268 RJB, 2017 WL 4843837, at *3 (W.D. Wash. Oct. 26, 2017), appeal dismissed, No. 17-35900, 2018 WL 2072706 (9th Cir. Feb. 14, 2018) ("An award of fees here may deter other providers from failing to consider evidence submitted by their beneficiaries that supports the continuation of benefits."). Thus, the court concludes that this factor also favors an award of fees.

4. Seeking to Benefit All Plan Participants and Beneficiaries or to Resolve a Significant Legal Issue

The fourth *Hummell* factor is whether the party requesting fees sought to benefit all Plan participants and beneficiaries or to resolve a significant legal question regarding ERISA. *Hummell*, 634 F.2d at 453. Plaintiffs did not seek relief for any other Plan member. (*See generally* Compl.; Plf. MSJ.) Further, the court decided this case on its facts. Although Plaintiffs argue that the court's discussion of the relative weight to be given to an examining or treating medical provider resolves a significant legal question (*see* MFF Reply at 3), the court's discussion in this regard was based on prior Second Circuit authority and district court decisions within this Circuit. (*See* 1/30/19 Order at 34-35.) Thus, the court concludes that this factor does not weigh in favor of an award.

//

5.  <u>The Relative Merits of the Parties' Positions</u>

The final *Hummell* factor is the relative merits of the parties' positions.  634 F.2d at 453.  In its January 15, 2019, order, the court scheduled a hearing on the parties' motions and directed the parties to come prepared to discuss certain issues "that the parties did not fully brief."  (1/15/19 Order at 1.)  Specifically, the court asked the parties to come prepared to discuss whether Lillian R.'s continued treatment at Elevations could be considered medically necessary based on the sixth provision of Premera's Medical Policy and whether Dr. Brockbank's February 2014 evalution of Lillian R. supported that conclusion.  (*Id.* at 3-4.)  Because neither party had fully addressed these issues prior to the court's January 15, 2019, order, the court concludes that this issue is neutral with respect to an award of fees.

6.  <u>Fee Award Summary</u>

Under the *Hummell* factors, the court concludes that Plaintiffs are entitled to an award of attorney's fees.  Three of the factors weigh in favor of an award, one weighs against, and the last factor is neutral. Therefore, the court GRANTS Plaintiffs' motion for an award of attorney's fees pursuant to 29 U.S.C. § 1132(g)(1).

7.  <u>Fee Calculation</u>

Plaintiffs seek a fee award of $50,437.50.  (King Decl. (Dkt. # 56-1) ¶¶ 11-12.) Plaintiffs' request includes fees for (1) Brian S. King at a rate of $600.00 per hour; (2) Mr. King's two associates at rates of $290.00 and $250.00 per hour, respectively; and (3) Mr. King's paralegal and legal assistant at rates of $195.00 and $110.00 per hour,

respectively.  (*Id.* ¶ 9.)  "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed."  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In determining the reasonable amount of fees to award, the court uses a hybrid lodestar/multiplier approach.  *McElwaine*, 176 F.3d at 1173.  The court arrives at the "lodestar" figure by multiplying the number of hours reasonably expended by a reasonable hourly rate.  *Id.*  Additionally, "in rare and exceptional cases, the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation."  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

Although Premera challenged Plaintiffs' entitlement to fees, Premera does not challenge the total amount of fees or the underlying hourly rates Plaintiffs claim.  (*See generally* MFF Resp.)  The court has reviewed Plaintiffs' evidence in support of the hourly rates they request for their attorneys and their attorneys' staff (*see generally* King Decl.; Hamburger Decl. (Dkt. # 56-2); DeBofsky Decl. (Dkt. # 56-3)), and finds it satisfactory, *see, e.g.*, *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").  The court is also allowed to rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate.  *Ingram v. Oroudjiam*, 647 F.3d

955, 928 (9th Cir. 2011). Here, the court concludes that the rates Plaintiffs request are reasonable based on the evidence Plaintiffs submitted and the court's own knowledge of the local legal market. *See, e.g.*, *Lehman v. Nelson*, No. C13-1835RSM, 2018 WL 3727600, at *1-2 (W.D. Wash. Aug. 6, 2018) (approving rates for attorneys in an ERISA matter of $665.00, $460.00, and $385.00 per hour and a rate for paralegals of $220.00 per hour); *Paulson*, 2017 WL 4843837, at *4 (approving rates for attorneys in an ERISA matter of $500.00 and $450.00 per hour and a rate for paralegals of $185.00 per hour); *Bunger v. Unum Life Ins. Co. of Am.*, 231 F. Supp. 3d 865, 872 (W.D. Wash. 2017) (approving a rate for an attorney in ERISA matter of $500.00 per hour).

The court has also reviewed the number of hours Plaintiffs' attorneys expended on this case and the work performed in those hours. (*See generally* King Decl. ¶¶ 11-12, Ex.) The court finds that the total number of hours Plaintiffs' attorneys expended on this matter was reasonable. Thus, the lodestar figure is $50,437.50. (*See id.*) No party asks the court to adjust this figure either up or down (*see generally* MFF; MFF Resp.; MFF Reply), and the court finds no reason for doing so. Accordingly, the court AWARDS Plaintiffs a total of $50,437.50 in attorney's fees.

**C.     Plaintiffs' Motion for Entry of Judgment and an Award of Prejudgment Interest**

Plaintiffs seek an entry of judgment against Premera in the amount of $123,849.00, which represents the amount they paid to Elevations for Lillian R.'s treatment from May 1, 2014, through Lillian R.'s discharge on June 21, 2015. (MFJ at 2-3.) This is the amount that Premera was obligated to pay Elevations on behalf of

Lillian R. under the Plan.  (*See id.*)  Premera does not oppose this aspect of Plaintiffs'

motion.  (*See* MFJ Resp. at 1.)  Accordingly, the court GRANTS this portion of

Plaintiffs' motion and will enter judgment in favor of Plaintiffs in this amount.

Plaintiffs, however, also seek an award of prejudgment interest at a rate of 6% per

year compounded annually.  (MFJ at 3-4; Notice (Dkt. # 72) at 2.)  Premera opposes an

award of prejudgment interest, and if awarded, Premera argues that the court should

apply the interest rate prescribed for postjudgment interest under 28 U.S.C. § 1961.  (*See*

*generally* MFJ Resp.)

The Ninth Circuit has held that a district court may award prejudgment interest in

ERISA cases to compensate a plaintiff for the loss he or she incurred due to the

defendant's nonpayment of benefits.  *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d

974, 988 (9th Cir. 2001).  "Prejudgment interest is an element of compensation, not a

penalty."  *Id.*  Whether to award prejudgment interest "is a question of fairness, lying

within the court's sound discretion, to be answered by balancing the equities."  *Shaw v.*

*Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465 (9th

Cir. 1985) (quoting *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir. 1971)).  Appropriate

considerations include whether the "financial strain" of paying prejudgment interest

would injure other plan beneficiaries and whether the defendants acted in bad faith.  *Id.*;

*see also Dishman*, 269 F.3d at 988.

Here, the court determines that an award of prejudgment interest is appropriate.

Premera is responsible to pay the cost of Lillian R.'s treatment from May 1, 2014 until

the day of her discharge on June 21, 2015.  (*See generally* 1/30/19 Order.)  Premera

initially denied the claim on November 18, 2014.  (*See* Compl. ¶ 31.)  Thus, Premera's

wrongful denial deprived Plaintiffs of the use of a substantial sum of money for a

considerable period.  An award of prejudgment interest will compensate Plaintiffs for this

loss of use.  Further, although the court did not find Premera committed "bad faith," it did

find its conduct "culpable" when it failed to adequately consider or ignored certain

medical evidence that supported coverage.  *See supra* § III.B.1.  Finally, there is no

evidence that an award of prejudgment interest will create a "financial strain" on

Premera, such that other Plan beneficiaries might be injured.  Balancing the equites, the

court concludes that an award of prejudgment interest is warranted.

Next, the court must decide the appropriate rate for this award.  "[T]he interest rate

prescribed for postjudgment interest under 28 U.S.C. § 1961 is appropriate for fixing the

rate of prejudgment interest unless the trial judge finds, on substantial evidence, that the

equities of that particular case require a different rate."  *Grosz-Salomon*, 237 F.3d at 1164

(quoting *Nelson v. EG & G Energy Measurements Grp., Inc*., 37 F.3d 1384, 1391 (9th

Cir.1994) (internal quotations omitted)); *see also Blanton v. Anzalone*, 813 F.2d 1574,

1576 (9th Cir. 1987) ("[B]ecause this circuit has a strong policy in favor of the Treasury

bill rate . . . any departure from it must be accompanied by a reasoned justification.")

(internal citation omitted).[7]

---

[7]According to the court in *Nelson*, to properly calculate the interest rate under 28 U.S.C.
§ 1961:

[t]he court applies the interest rate that was in effect at the time payment was due
to the plaintiff, not the rate applicable as of the date of the judgment.  To cover the
costs of the lost investment potential of funds to which a plaintiff was entitled, the

In support of their request for a 6% prejudgment interest rate, Plaintiffs submit a declaration from Todd R. (3/8/19 Todd R. Decl. (Dkt. # 72-1).) In this declaration, Todd R. states that, to pay for Lillian R.'s treatment, he borrowed from a cash management account ("CMA") he holds with Merrill Lynch. (*Id.* ¶ 6.) He further states that the interest rate for the funds he borrowed from his CMA fluctuated during years 2014-2016 between 6.125% and 8.875%. (*Id.* ¶ 8.) He attests that he "paid a total of $16,226.68 in interest for the time frame [sic] while Lillian was being treated until the funds were paid off." (*Id.* ¶ 9.) He also states that he "lost the benefit of interest that would have accrued on the funds I borrowed to pay for Lillian's treatment at a more modest amount of approximately 2%." (*Id.* ¶ 10.) He concludes that he "believe[s] an award of prejudgment interest at the rate of 6% is appropriate." (*Id.* ¶ 11.) Based on a 6% rate, Plaintiffs seek a prejudgment interest award of $34,229.56. (Notice at 2.)

Premera argues that Plaintiffs fail to provide "substantial evidence" to support a prejudgment interest award in excess of the rate provided in 28 U.S.C. § 1961. (MFJ Resp. at 2-3.) Premera notes that Plaintiffs provide no calculations for the $16,226.68 that Todd R. attests he paid in interest on his CMA account. (MFJ Resp. at 3.) Further, although Todd R. provides statements from his CMA account that contain interest

---

interest rate should be calculated as though the plaintiffs had invested the withheld funds at the 52-week Treasury bill rate and then reinvested the proceeds annually at the new rate. The Treasury bill rate at the beginning of each year presents a slightly more accurate reflection of a 52–week Treasury bill investment than the average during each year.

*Lee v. Sun Life Assurance Co. of Canada*, No. CV-08-140-ST, 2010 WL 2231943, at *7 (D. Or. Apr. 1, 2010) (citing *Nelson*, 37 F.3d at 1391-92) (internal citation and quotation omitted).

charges, those statements also show that personal expenses were incurred through disbursements from the same CMA. (*See* 3/8/19 Todd R. Decl. ¶ 8, Ex.; *see also* MFJ Resp. at 3.) Moreover, Plaintiffs do not disclose whether the funds drawn from this account are their own funds or a loan from a third party, and therefore whether they paid interest to themselves or to a third-party. (*See generally* 3/8/19 Todd R. Decl.; *see also* MFJ Resp. at 3.) In addition, Plaintiffs provide no support for Todd R.'s statement that he would have accrued approximately 2% interest on the funds he needed to borrow for Lillian R.'s treatment; nor do they establish that he has the expertise to assert this opinion. (*See* 3/8/19 Todd R. Decl. ¶ 10; MFJ Resp. at 3.) Finally, the court presumes that Plaintiffs' request for a 6% prejudgment interest rate is tied to the $16,226.68 that Todd R. attests he paid in interest and the 2% earnings he asserts that he lost, but Todd R. does not explain how this calculation was made or his qualifications for doing so. (*See generally* 3/9/19 Todd R. Decl.) Accordingly, the court concludes that Plaintiffs failed to present substantial evidence upon which the court could depart from the presumptive interest rate contained in 28 U.S.C. § 1961. The court, therefore, DENIES Plaintiffs' request for a 6% prejudgment interest rate, and AWARDS the rate provided in 28 U.S.C. § 1961.

## IV. CONCLUSION

Based on the foregoing analysis, the court DENIES Premera's motion for reconsideration (Dkt. # 52), GRANTS Plaintiffs' motion for attorney's fees (Dkt. # 56), and GRANTS in part and DENIES in part Plaintiffs' motion for entry of judgment and an award of prejudgment interest (Dkt. # 61). Based on the foregoing rulings, the court

ORDERS the parties to meet and confer and submit a proposed judgment—or, if they cannot agree, competing proposed judgments—no later than seven (7) days from the date of this order.

Dated this 30th day of April, 2019.

JAMES L. ROBART
United States District Judge