THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

TODD R., SUZANNE R., and LILLIAN R.,

        Plaintiffs,

v.

PREMERA BLUE CROSS BLUE SHIELD OF ALASKA,

        Defendant.

No. 2:17-cv-01041-JLF

**AMENDED COMPLAINT**

Plaintiffs Todd R. ("Todd"), Suzanne R. ("Suzanne") and Lillian R. ("Lillian"), through their undersigned counsel, complain and allege against Defendant Premera Blue Cross Blue Shield of Alaska ("PBC") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Todd, Suzanne, and Lillian[1] are natural persons residing in the Matanuska-Susitna Borough, Alaska. Todd and Suzanne are Lillian's parents.

2. Todd is the owner of a company that provides a number of benefits for its employees including, but not limited to, a group health benefits plan ("the

---

[1] Lillian was formerly known as Jonathan R. and is referred to as "Jon" or "Jonathan" throughout the medical records associated with the claim at issue in this case. Plaintiffs will refer to "Lillian" in their pleadings.

AMENDED COMPLAINT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
420 E. South Temple, Suite 420
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

Plan"). Todd is a participant in the Plan and Suzanne and Lillian are beneficiaries of the Plan.

3. PBC is an insurance company and is the insurer for the Plan.

4. PBC does business in Utah through Regence BlueCross BlueShield of Utah ("Regence"), the local Blue Cross Blue Shield affiliate. PBC utilized a preferred provider contract between the health care provider and Regence when paying benefits for the medical care at issue in this case.

5. The Plan is a fully insured employee welfare benefits plan under 29 U.S.C. §1001 et. seq., of the Employee Retirement Income Security Act of 1974 ("ERISA").

6. Lillian received medical care and treatment at Island View Residential Treatment Center ("IVRTC"), a residential treatment facility in Davis County, State of Utah. IVRTC (now known as Elevations) is a licensed and accredited health care provider in the State of Utah and provides residential treatment for adolescents with mental health conditions.

7. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

8. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) because the medical treatment at issue in this case was provided in the State of Utah, the Defendants do business in the State of Utah, and Todd and Suzanne's financial obligations to Lillian's healthcare providers were incurred in the State of Utah. In addition, in light of the sensitive nature of the treatment provided to Lillian, it is the Plaintiffs' wish to bring the case in Utah to protect Lillian's identity. Based on ERISA's nationwide service of process provision and 28 U.S.C. §1391, venue is appropriate in the State of Utah.

9. The remedies the Plaintiffs seek under the terms of ERISA, the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), are for the benefits due for

AMENDED COMPLAINT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
420 E. South Temple, Suite 420
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

Lillian's medical care, for an award of prejudgment interest pursuant to U.C.A. §15-1-1, and for an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

**Background Facts**

10. Lillian was a full term baby and developed normally. She was in the gifted program at her school and was happy and well-liked. She was a gifted artist.

11. When she was eleven years old, Lillian went to summer camp and returned exhausted and experiencing constant headaches. She was ultimately diagnosed with mononucleosis and her symptoms resolved.

12. A couple of months later, Lillian had the flu and an infection. Her chronic daily headaches returned.

13. Lillian was seen and evaluated by numerous doctors without successful resolution of her symptoms. Todd and Suzanne took Lillian to Seattle for evaluation at the Children's Hospital where she had a number of biofeedback sessions.

14. Lillian became anxious and depressed and withdrew from her friends. Over the next months, there were several trips to Seattle but no diagnosis or treatment were found. Lillian's condition deteriorated and she became frustrated and angry.

15. A nerve block was tried for Lillian and she had a very bad reaction to the anesthetic. In spite of the fact that she was uncontrollably vomiting, hospital staff insisted on completing the procedure. Lillian was so upset and traumatized by this experience that she began experiencing auditory and visual hallucinations. She was terrified.

16. Lillian was diagnosed with post-traumatic stress disorder and began taking Sertraline, a psychiatric medication. Her symptoms gradually abated but the headaches, while less intense, continued.

AMENDED COMPLAINT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
420 E. South Temple, Suite 420
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

17. In 2012, when Lillian was 14, she was evaluated at the Cleveland Clinic's Pediatric Pain Clinic. She was inpatient for two weeks and outpatient for one week. A doctor there said that he believed the headaches were related to tension.

18. Sometime soon thereafter, Lillian and a friend bumped their heads together accidentally, resulting in much more severe headaches for Lillian. She went to the emergency room for treatment.

19. Lillian's anxiety and depression continued to worsen. Her great aunt died in an aircraft accident and just a few months later, Lillian's younger sister was diagnosed with Wilm's Tumor, a cancer condition requiring radiation and chemotherapy. Lillian was completely overwhelmed and became more and more isolated.

20. The one exception to Lillian's isolation was her girlfriend. If she could not be with her or talk to her constantly, she would cry inconsolably.

21. Lillian ran away from home and it took two days for the police and her family to find her.

22. Lillian was becoming more actively hostile and defiant and injured Suzanne's arm when she threw a phone at her.

23. Lillian ran away again. After she was located at her girlfriend's home and brought home, she continued to be hostile and defiant. She told her girlfriend that she was going to hurt herself and Todd and Suzanne took her to the hospital.

24. Suzanne was closely watching Lillian day and night to ensure that she didn't do anything to herself. She discovered that she was cutting herself on her arms.

25. Lillian began dressing in girls' clothing and insisted that she was transgender.

AMENDED COMPLAINT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
420 E. South Temple, Suite 420
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

26. After Lillian refused to go on a family vacation, Suzanne and her daughters went on the trip and Todd stayed home with Lillian. Todd took Lillian to the hospital for an evaluation. The hospital recommended admission to Providence's Crisis Recovery Center. When asked why she needed to go, Lillian said it was because her parents would not accept her.

27. Lillian continued to refuse treatment and medication. At one point, she jumped out of the car in traffic.

28. Lillian was transported by an escort company to Utah and was admitted at IVRTC on December 31, 2013.

29. Lillian's initial diagnoses were:

> AXIS I: Post Traumatic Stress Disorder; Major Depressive Disorder, Recurrent, Moderate (in the past, severe with possible psychotic features), Parent Child Relational Problem; Academic Problem; Rule out Eating Disorder, NOS (restrictive type); Rule out Anxiety Disorder (possible OCD symptoms prior to medical illness onset)
>
> AXIS II: No diagnosis
>
> AXIS III: New Daily Persistent Headache (previously diagnosed as tension headaches) with unreliable pain control history; intermittent pattern of appetite restriction with a goal to lose weight (currently noted to be of slim build already)
>
> AXIS IV: Significant family stressors, including interplay of sibling illness (cancer) with Lillian's recurrent headaches, which are improved but not resolved, decline in academic standing, enmeshment with girlfriend and associated gender identity diffusion
>
> AXIS V: Current GAF: 36[2] Previous Year GAF: 40

---

[2] G.A.F., or global assessment of functioning, was developed as a tool for mental healthcare providers to assess the overall level of function and ability to carry out activities of daily living for their patients. There is a separate scale utilized when the patient is a child or an adolescent as opposed to an adult. A GAF of 36 on the child's global assessment scale indicates: "Major impairment in functioning in several areas and unable to function in one of these areas, i.e. disturbed at home, at school, with peers, or in the society at

AMENDED COMPLAINT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
420 E. South Temple, Suite 420
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

30. Lillian was extremely resistant to treatment and it took quite some time for her therapists to find interventions that were helpful for her. However, ultimately she progressed at IVRTC and was discharged to a therapeutic boarding school for additional treatment on June 21, 2015.

31. Claims were submitted to PBC for coverage of Lillian's medical expenses but PBC denial the claims for treatment after April 30, 2014 on the basis that Lillian's conditions did not meet Milliman Care Guidelines ("MCG") for residential treatment after that date. The date of PBC's denial is November 18, 2014.

32. Todd and Suzanne appealed the denial on May 13, 2015, and argued that the MCG were not available to them, but based on PBC's citations to the MCG, those guidelines were not reflective of generally accepted standards of care, a requirement of the Plan.

33. They provided a detailed chronology of Lillian's deterioration and argued that, based on standards of care, her residential treatment was necessary.

34. PBC upheld its denial on June 16, 2015, asserting that appeals for treatment provided between May 1, 2014 and August 31, 2014 were untimely because they were not submitted within 180 days of the denial of coverage. PBC's letter stated that the claims had been processed on December 5, 2014.

35. There are 159 days between December 5, 2014, the date the claims were processed and denied, and May 13, 2015, when Todd and Suzanne appealed

---

large, e.g., persistent aggression without clear instigation; markedly withdrawn and isolated behavior due to either mood or thought disturbance, suicidal attempts with clear lethal intent. Such children are likely to require special schooling and/or hospitalization or withdrawal from school (but this is not a sufficient criterion for inclusion in this category." in Psychiatric Measures, APA, Washington DC, 2000

AMENDED COMPLAINT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
420 E. South Temple, Suite 420
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

the denial.

36. As for treatment provided after August 31, 2014, PBC again asserted that Lillian's conditions did not meet the MCG for residential treatment.

37. Todd and Suzanne appealed again on August 10, 2015 and PBC maintained its denial on September 10, 2015. PBC asserted that the claim had been reviewed by a medical director board certified in internal medicine, a "member contracts operations manager," and a "new group and product implementation manager."

38. Todd and Suzanne requested an external review on December 18, 2015 and the external reviewer, "mcmc," upheld PBC's denial, asserting that there were other, less intensive levels of care that would have been appropriate for Lillian.

39. Todd and Suzanne exhausted their appeal obligations under the terms of the Plan and ERISA.

40. PBC's denial has harmed the Plaintiffs in that they have been required to pay out-of-pocket for Lillian's treatment in an amount exceeding $160,000.

## CAUSE OF ACTION CAUSE OF ACTION
### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

1. ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan fiduciaries such as PBC, acting as agent and insurer of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. §1104(a)(1).

AMENDED COMPLAINT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
420 E. South Temple, Suite 420
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

2. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials. 29 U.S.C. §1133(2).

3. PBC breached its fiduciary duties to the Plaintiffs when it failed to comply with its obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in the Plaintiffs' interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of the Plaintiffs' claims.

4. The actions of PBC in failing to provide coverage for Lillian's medically necessary treatment at IVRTC are a violation of the terms of the Plan and generally accepted standards of care.

5. The actions of PBC, in failing to identify the first reviewer(s) and in failing to have qualified clinical practitioners review the final claim, are violations of ERISA and its claims processing regulations.

6. The actions of PBC, as outlined above, have caused damage to the Plaintiffs in the form of denial of payment for medical services rendered to Lillian in an amount exceeding $160,000.

7. PBC is responsible to pay Lillian's medical expenses as benefits due under the terms of the Plan together with prejudgment interest pursuant to U.C.A. §15-1-1, attorney fees and costs pursuant to 29 U.S.C. §1132(g).

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the amount of $161,381, the total amount that is owed for Lillian's medically necessary treatment at IVRTC under the terms of the Plan and the preferred provider contract between Regence and IVRTC, plus pre and post-judgment interest to the date of payment;

2. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

3. For such further relief as the Court deems just and proper.

AMENDED COMPLAINT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
420 E. South Temple, Suite 420
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

DATED this 8th day of February.

        /s/ Brian S. King
        Brian S. King
        Attorney for Plaintiffs (admitted pro hac vice)
        420 E. South Temple, Suite 420
        Salt Lake City, UT 84111
        (801) 532-1739
        (801) 532-1936 (fax)

John Walker Wood, WSBA 39120
The Wood Law Firm, PLLC
800 Fifth Avenue Suite 4100
Seattle, WA 98104
(206) 650-0765
(206) 577-5380 fax
john@woodfirm.com

AMENDED COMPLAINT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
420 E. South Temple, Suite 420
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)

# CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States, that on the 31st day of October, 2018, the foregoing document was presented to the Clerk of the Court for filing and uploading to the Court's CM/ECF system. In accordance with the ECF registration agreement and the Court's rules, the Clerk of the Court will send email notification of this filing to the following attorney for the defendant:

    Gwendolyn C. Payton
    Kilpatrick Townsend & Stockton LLP
    1420 Fifth Avenue, Suite 3700
    Seattle, WA 98101
    gpayton@kilpatricktownsend.com

DATED: February 8, 2021.

                                  <u>s/ John Walker Wood</u>
                                  John Walker Wood (WSBA #39120)
                                  The Wood Law Firm, PLLC
                                  800 5th Ave, Suite 4100
                                  Seattle, WA 98104
                                  (206) 447-1342 (office)
                                  (206) 577-5380 (fax)
                                  Email: john@woodfirm.com

AMENDED COMPLAINT
NO. 2:17-cv-01041-JLR

BRIAN S. KING, Attorney at Law
420 E. South Temple, Suite 420
Salt Lake City, UT 84111
(801) 532-1739, (801) 532-1936 (fax)